OUGHTNEY JANGRAW *v.* JOSEPH PERKINS.

October Term, 1904.

Present: TYLER, MUNSON, START, WATSON, HASELTON, and POWERS, JJ.

Opinion filed April 5, 1905.

*Bastardy—Intermarriage of Parties—Third Party's Security for Support—Mortgages—Validity—Public Policy.*

Marriage between a pregnant single woman and her seducer is especially favored and encouraged by the law; and his contracts made in contemplation of such marriage are valid.

The seducer of a pregnant single woman, who had instituted bastardy proceedings against him, offered to marry her, and, in order to induce her and her father to consent to the marriage and to dismiss said proceedings, defendant executed a mortgage conditioned that the prospective husband should support his wife and her child, and not desert them. *Held*, that such mortgage is not contrary to public policy, and on breach of the condition is enforceable.

APPEAL IN CHANCERY. Heard on demurrer to the amended bill of complaint at the March Term, 1904, Washington County, *Rowell,* Chancellor. Demurrer overruled; bill adjudged sufficient and taken as confessed. The defendant appealed.

This case has been once before in the Supreme Court. See 76 Vt. 127. The opinion states the substance of the amended bill.

The condition of the mortgage is as follows:

"WHEREAS, Harvey Revett, now of Montpelier, in the County of Washington and the State of Vermont, is about to contract marriage with Mary E. Jangraw, daughter of Oughtney Jangraw, both of Montpelier, in the County of Washington and State of Vermont. Now THEREFORE, The conditions of this deed are such that if the said Harvey Revett shall immediately marry the said Mary E. Jangraw, and shall, to the best of his ability, for the term of six years, be to her a good and faithful husband, support her and her children to the best of his ability and otherwise conduct himself as a husband should to a wife, and shall fulfill the terms of the marriage contract, then this deed shall be null and void; but if the said Harvey Revett shall not well and faithfully perform the acts and things hereinbefore set forth to be by him performed during the said term of six years from the date of this deed, then the said Joseph Perkins shall, within three months after the first breach of said conditions on the part of the said Harvey Revett pay to the said Oughtney Jangraw the sum of Five Hundred Dollars, to be by said Oughtney Jangraw held in trust for the support, care and maintenance of the said Mary E. Jangraw and any children of her body then living; but if the said Harvey Revett shall well and faithfully maintain and support his wife according to the conditions hereinbefore set forth, but shall decease before the expiration of

said six years, then his death, provided he has fulfilled the conditions above set forth, shall avoid this mortgage. If all the conditions of this deed, as above set forth, are fully complied with, then this deed shall be null and void, and it shall be null and void at the end of six years by its own limitation, otherwise in full force and virtue. And the said Harvey Revett also agrees that, commencing on the 1st day of January, 1902, he will deposit in the Montpelier Savings Bank and Trust Company, at Montpelier, on the first day of each month, during the year 1902, the sum of Four and 25-100 Dollars, and for the five years following 1902 he is to deposit the sum of Six and 25-100 Dollars on the first day of each month, in each of said years, said sums to be deposited in the name of his wife, whose name will then be Mary E. Revett, to be in trust for her and her children for the full term of six years, and it is a condition of this mortgage that the amount of money so by him deposited, as fast as deposited, shall reduce the amount of this mortgage, that is, the amount so deposited, in case of a breach of the conditions of this mortgage, shall be applied to reduce the Five Hundred Dollars' penalty to be paid by said Joseph Perkins."

*R. M. Harvey* and *E. M. Harvey* for the Orator.

The mortgage, in the circumstances revealed by the amended bill, is not against public policy. Greenhood on Public Policy § § 482-483; *Farnum* v. *Bartlett,* 52 Me. 570; *Wyant* v. *Lesher,* 23 Pa. St. 338; *Wright* v. *Wright,* 114 Iowa 748; *O'Connell* v. *Noonan,* 1 App. Cas. (D. C.) 332; *Hann* v. *Crickler,* 43 Atl. 1063; *Thayer* v. *Spear,* 58 Vt. 327; Ray on Contractual Limitations, § 30; *Born* v. *Horstman,* 80 Cal. 454; *Barrett* v. *Barden,* 65 Vt. 431; *Reamey* v. *Bayley,* 11 Atl. 438; *Wright* v. *Wright,* 141 Iowa 748; 55 L. R. A.

261; *Squires* v. *Squires,* 53 Vt. 208; *Clark* v. *Fosdick,* 6 L.
R. A. 132.

*Heaton & Thomas* and *Frank S. Williams* for the de-
fendant.

Even in the circumstances revealed by the amended bill,.
the mortgage is void as being a marriage brokerage contract.
This vitiating element still remains, viz.: that the mortgage is.
conditioned that the mortgagor should bring about the mar-
riage. *Jangraw* v. *Perkins,* 76 Vt. 127; Anderson's Diction-
ary of Law 688; *Tuttle* v. *Armstead,* 53 Conn. 175 at 181;
*Mitchell* v. *Burnham,* 44 Me. 299; *Cook* v. *Bartholomew,* 60.
Conn. 24; *Crawford* v. *Bussell,* 62 Barb. (N. Y.) 92; *Hall
and Keen* v. *Potter,* 3 Lev. 412; *Johnson, Admr.* v. *Hunt,* 81
Ky. 321; *Dunval* v. *Williams,* 124 N. Y. 156; Albany Law
Journal, Vol. 48, Page 508; Parsons on Contracts, 5 Ed. Vol.
2, page 74; Addison on Contracts, Morgan's Ed. Vol. 3, page
441, § 1394; *Stribblehill* v. *Brett,* 2 Vern. 445, *White* v.
*Equitable Nuptial Benefit Union,* 76 Ala. 251; *Morrison* v.
*Rogers,* 56 Am. St. Rep. 95; *Debenham* v. *Ox,* 1 Ves. Sen.
276; *Boyden* v. *Hubbard,* 7 Mass. 119; *Fuller et al.* v. *Dane,*
18 Pick. 472 at 481.

The mortgage is also void because it compels Revett to
make the monthly deposit mentioned in the condition. Such
an undertaking tends to deprive the family of the earnings.
of the husband, and for that reason is against public policy.
*Hawke* v. *Enyert,* 30 Neb. 149; *Potter* v. *McAlpine,* 3 Dem.
(N. Y.) 108 at 123; 33 Mich. 78.

Powers, J. When this case was here on a demurrer to
the original bill—*Jangraw* v. *Perkins,* 76 Vt. 127, 56 Atl.
532,—it was held that the contract set forth therein was con-
trary to public policy and void. The cause was remanded, the

bill has been amended, and the sufficiency of the amended bill is now submitted to our determination.

The facts now shown by the record, so far as it is necessary to recite them, are as follows: Mary Jangraw, the unmarried minor daughter of the complainant, being pregnant, instituted bastardy proceedings against one Revett, and caused his arrest thereon. Revett gave bail, acknowledged that he was the father of the child, and offered to marry the girl. Mary and her father objected to the marriage and the discharge of the bastardy proceedings, unless Revett gave security for the support of the mother and child. Thereupon, the defendant, a relative of Revett's, at Revett's procurement, executed the mortgage here in question, and agreed to deliver the same to the complainant upon the marriage of Mary and Revett and the discontinuance of the bastardy proceedings. Relying upon this mortgage, the complainant and his daughter consented to the marriage; the ceremony was performed, the bastardy proceedings discontinued, and the mortgage delivered according to the agreement. After a time, Revett deserted his wife and child, and neglected and refused to care for and support them.

This is an entirely different case than was before presented. The new allegations relieve the contract of its objectionable features, and the rule which controlled the case as made by the original bill does not now apply. A marriage between parties situated as these were is especially favored and encouraged by the law,—not only that the most appropriate recompense may be afforded and the most effectual reparation may be made, but that the offspring may be made legitimate,— and the contracts and undertakings of the seducer made in contemplation of such a marriage are valid and binding. Bish. Cont. § 511.

In *Wyant* v. *Lesher, et al,* 23 Pa. St. 338, John Lesher, one of the defendants, addressed the daughter of the plaintiff, and she being pregnant, he refused to marry her, and a prosecution was instituted against him. After his arrest, he proposed to marry the girl, and the plaintiff required from him security that he would treat her well and not desert her. He thereupon gave a bond, with surety, the condition of which was that "he treats her as a loving and affectionate husband ought to do, and not to desert her,"—the penalty being payable to the plaintiff for the use and support of the daughter and her heirs,—and the father consented to the marriage. The action was on the bond. It was urged in behalf of the defendants that the bond was without consideration, and was against public policy and void. Both points were ruled in favor of the plaintiff. "I see no more tendency," said the Court, "in such a contract as this bond, to disturb the harmony of conjugal life than in a marriage settlement, or in articles entered into after marriage looking to a future separation. This husband stipulated simply for the performance of his duty, and a faithful discharge of that was the surest way to preserve peace in his family. Among the most imperative of the duties assumed in the marriage contract, were the support and maintenance of his wife and child, and for these it was prudent in her father to exact from him a security additional to the marriage vow."

In *Wright* v. *Wright,* (Ia.) 55 L. R. A. 261, the plaintiff had given birth to an illegitimate child of which the defendant's son was the father. She afterwards entered into a written agreement of marriage with the younger Wright. At the same time, and as a part of the same transaction, the defendant executed a written agreement with the plaintiff which contained the following provision: "If she (the plaintiff) shall marry said Edward Wright on this day, and per-

form the duties of a wife to said Edward Wright to the best of her ability, and said Edward Wright should forsake her or her child, Edward Wayne Wright, * * * * then I will furnish a home for her and said child." The husband deserted the paintiff, and suit was brought on the contract. It was insisted in defence that the contract was without consideration and was contrary to public policy. Judgment was given for the plaintiff in the lower court, and in affirming that judgment the Court quotes approvingly from the opinion in *Wyant* v. *Lesher, supra.*

*Armstrong* v. *Lester, et al,* 43 Ia. 159, was an action on the following contract: "One day after date I promise to pay Russell Armstrong for the use of Isabel Nicholson, or the child with which she is now pregnant and of which the principal hereof is the father * * * the sum of five hundred dollars. * * * Provided that if A. W. Lester, principal, shall marry and in good faith live and abide with and support Isabel Nicholson, and support and keep and care for the child with which she is now pregnant and of which he is the father, no part of this note shall become due or payable; but if he should not marry, or, having married, leave or abandon her for any cause, * * * this note shall become and shall be considered due * * *."

> (Signed) A. W. LESTER, Principal.
>
> H. W. LESTER.    } Sureties.
> J. T. LESTER,      }

The sureties defended. After holding that the consideration was sufficient, the Court says: "It is urged that the contract is illegal and against public policy. But an obligation whereby one secures a provision made for a wife and child so far from being illegal, is regarded with favor by the law. * * * * Marriages celebrated under such circumstances are encouraged by the law. All settlements and contracts en-

tered into in contemplation of such marriages, which have been fairly made and would under other circumstances be upheld, cannot be defeated."

The new allegations of the bill bring the case under consideration squarely within the authority of these cases,—the reasoning of which is satisfactory and decisive.

*Decree reversed, pro forma, demurrer overruled, bill adjudged sufficient, and cause remanded, with costs in this Court to the complainant.*