**HANES v. HANES.    (No. 248–3448.)**

(Commission of Appeals of Texas, Section B. Dec. 7, 1921.)

Deeds ⚓73—Not invalid because in consideration of marriage, causing dropping of prosecution for seduction.

In view of Pen. Code 1911, art. 1449, relative to the effect of marriage on a prosecution for seduction, where, upon the marriage of one convicted of seduction with the girl seduced, he was released and the conviction presumably set aside by the judge, from entirely proper motives, the fact that the girl's father refused to consent to the marriage unless accused's father would convey land to the girl did not render the deed invalid, as in consideration of an illegal agreement to stifle the prosecution.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Mabel Hanes against C. W. Hanes. A judgment for plaintiff was reversed by the Court of Civil Appeals (216 S.

W. 272), and plaintiff brings error. Reversed, and judgment of the district court affirmed.

Woods & Morrow, of Kaufman, for plaintiff in error.

Huffmaster & Huffmaster, of Kaufman, for defendant in error.

McCLENDON, P. J. This was an action in trespass to try title brought by Mabel Hanes against C. W. Hanes to recover 50 acres of land which had previously been conveyed to plaintiff by defendant and his wife. Among other defenses, it was urged that the deed from defendant and wife to plaintiff was void because against public policy, in that its consideration was an agreement to suppress the prosecution of defendant's son, Bryan Hanes. Plaintiff recovered the land in the district court upon a special issue verdict. The Court of Civil Appeals reversed this judgment and rendered judgment for defendant, upon the holding that the evidence sustained the above-noted defense as a matter of law, and that the trial court should have instructed a verdict for defendant. 216 S. W. 272. All other questions urged upon appeal were decided adversely to defendant.

The only question presented for review in the Supreme Court is the correctness of this holding of the Court of Civil Appeals; and it is therefore necessary to state only so much of the evidence as will suffice to a clear understanding of that issue.

On June 19, 1914, Bryan Hanes was held in the county jail of Dallas county, having been convicted and given a five-year term in the penitentiary upon the charge of having seduced the plaintiff (then Mabel Smith), who was under 21 years of age, and was then pregnant and in a rescue home in the city of Dallas. None of the records in the criminal case were offered in evidence, but we assume from the testimony that the term of court at which the conviction was had had not expired, and no appeal had been taken. On the day named the deed in question was executed, which recited a consideration of "one dollar and other valuable consideration," and, further, "that the value of this land be deducted from Bryan Hanes' part of the estate of C. W. Hanes, his father." The deed was an absolute conveyance by general warranty, and was executed and acknowledged by defendant and wife with all essential legal formalities. On the same date Bryan Hanes and Mabel Smith were married in the district court room by the judge who sat in the criminal case, and in the presence of the prosecuting attorney. After the ceremony Bryan Hanes was released, and he and plaintiff lived together as man and wife in the home of defendant for about three months. We assume from the record that the judgment of conviction was set aside by the district judge. What was then done with the charge does not appear. The negotiations leading up to the execution of the deed were conducted in the main between plaintiff's father, J. B. Smith, and defendant. It is quite apparent that the latter and his wife were very much disturbed over the conviction of their son. The only means of obtaining his release which appeared open to them was to effect a marriage between plaintiff and their son, and the only condition upon which plaintiff's father would consent to the marriage was the conveyance of the land to his daughter.

The conclusion reached by the Court of Civil Appeals, that the deed was tainted with illegality and void, in that the consideration in part was an agreement to suppress the prosecution of Bryan Hanes, is rested upon the following quotation from the testimony of J. B. Smith:

"As to how the deed came to be made, will say that the boy, Bryan, was in prison and Mr. Hanes wanted him out, and that was the only way to get him out was by signing this deed; this deed was made to get Bryan out of prison —for my daughter to marry him to get him out of prison. * * * Yes; the consideration of the deed was that the case was to be dismissed and Bryan was to be turned out of jail after he married Mabel. We were willing to drop the court proceedings against Bryan so long as he acted a gentleman and treated my daughter right; he had a sentence of five years and was talking about appealing the case. * * * I exacted of Mr. Hanes a conveyance to my child of 50 acres of land, and when he executed the deed I was willing for my daughter to marry his son; otherwise, Bryan Hanes would have gone to the penitentiary; the land was for the support of her and her child; I didn't give my daughter for the deed."

On the other hand, plaintiff testified that the only consideration for the deed was her marriage to defendant's son.

The record does not disclose the method by which the release of defendant's son was obtained, further than the bare facts that the district judge performed the marriage ceremony in the presence of the prosecuting attorney, and that Bryan Hanes was then released. It may be inferred, we think, that the district judge was willing to set aside the conviction, and he and the prosecuting attorney were willing that Bryan Hanes should be released in case a marriage with plaintiff was consummated. Beyond this the record is silent.

It cannot be questioned that, in so far as plaintiff's active participation in the transaction is concerned, the conclusion is supported by the evidence that her marriage with Bryan Hanes constituted the only consideration for the deed—a consideration valid in law upon the highest grounds of public policy. The question of controlling importance presented

here is whether the testimony of plaintiff's father above quoted shows the further consideration of an illegal agreement to stifle prosecution. That testimony cannot be dissociated from the surrounding circumstances and the situation of the parties; and when so viewed we think the above question must necessarily be answered in the negative.

Under article 1449 of the Penal Code, to the extent that that article was held valid in Waldon v. State (Cr. R.) 98 S. W. 849, Bryan Hanes had it within his power to relieve himself of the legal penalties attaching to his crime by a bona fide offer to marry plaintiff, made prior to his plea to the indictment; and marriage of the parties before such plea would, of itself, require dismissal of the indictment and satisfy the criminal law. Consummation of the marriage under such circumstances would therefore, ipso facto, extinguish the crime, and render further prosecution impossible; from which it follows that any collateral or appendant agreements, whether expressed or implied, which might relate to the prosecution, would be supererogatory. By marrying the accused the aggrieved party would cut herself off from participation in his further prosecution more effectually than she could do so by any agreement, however clearly, unequivocally, or solemnly made. Under such circumstances the motives of the parties are not made by statute to have any bearing upon the legal effect of their acts, and clearly are not proper subjects of inquiry. It may be conceded that the impelling motive of the accused, or those representing him, in obtaining the marriage, was to avoid the legal consequences of his crime. The statute which declares the policy of the law in that regard is free from uncertainty in permitting him to avoid those consequences in the mode therein provided. We can hardly see how it could be justly urged that a contract is against public policy and void as tending to suppress prosecution for crime, when the law itself terminates the prosecution when the parties concerned have complied with such agreement. This view, we think, is sound in principle, and supported by the weights of authority in this country.

In Griffin v. Griffin, 130 Ga. 527, 61 S. E. 16, 16 L. R. A. (N. S.) 937, 14 Ann. Cas. 866, the Supreme Court of Georgia, construing a statute in all essential respects similar to our own, says:

"It is clear that the plaintiff is not entitled to cancel the bond given under Penal Code 1895, § 388, to stop the prosecution for seduction. To slightly paraphrase the language of Mr. Justice Cobb, in the case of Duke v. Brown, 113 Ga. 310, the plaintiff was given his choice between the penitentiary and the contract; and, if he elects to enter into the contract instead of the penitentiary, he must not forget that he has purchased his liberty at the price of the undertaking, and he is not entitled to have his undertaking, which he elected to make in lieu of a possible term of penal servitude, set aside because he may now be able to demonstrate his innocence of the crime of seduction."

The following is from the Supreme Court of Iowa:

"So far as the contract in suit was a part of the arrangement by which the criminal prosecution against defendant was abandoned, it is not unlawful. The statute, in providing that marriage before judgment shall bar a prosecution for seduction (Code, § 3668), contemplates, of course, that the prosecutrix and defendant may arrange for the abandonment of the proceedings in that way. Marriages celebrated under such circumstances are encouraged by the law. All settlements and contracts entered into in contemplation of such marriages, which have been fairly made and under other circumstances would be upheld, cannot be defeated." Armstrong v. Lester, 43 Iowa, 159.

The policy of the law underlying the enactment of statutes which permit the defendant in a seduction case to expiate his guilt by marriage with the seduced female is readily self-suggestive and requires little discussion. To quote from a recent text upon the subject:

"Even in the absence of a statutory provision to this effect, it has been held that where the accused marries the female alleged to have been seduced, a prosecution for seduction is barred. This view is based on the ground that as the promise to marry (a necessary element in the crime of seduction) has been performed, it would be against public policy and decency to permit a prosecution thereafter." 24 R. C. L. p. 771.

A close analogy to the question under discussion is presented in the cases which hold that bastardy proceedings authorized by statute, though regarded as quasi criminal in their nature, may be compromised and adjusted by marriage of the parties. Jangraw v. Perkins, 77 Vt. 379, 60 Atl. 385, 2 Ann. Cas. 492; Rohrheimer v. Winters, 126 Pa. 253, 17 Atl. 606; Wyant v. Lesher, 23 Pa. 338.

In the Vermont case, above, the court say:

"A marriage between parties situated as these were is especially favored and encouraged by the law, not only that the most appropriate recompense may be afforded and the most effectual reparation may be made, but that the offspring may be made legitimate, and the contracts and undertakings of the seducer made in contemplation of such a marriage are valid and binding. Bish. Cont. § 511."

From what has been said we think it follows that the deed in question is in no sense tainted with illegality. At the time it was executed Bryan Hanes had been convicted in a trial in which plaintiff was the chief

(234 S.W.)

witness. The case had passed beyond the control of plaintiff or her father. Only the judge who tried the case was in position to set aside the conviction; and upon granting that relief the cause would stand upon the docket as it did before plea to the indictment, and marriage of the parties would require its dismissal. There is no suggestion in the record that the action of the judge in setting aside the judgment of conviction was from other than entirely proper motives and considerations. It was in his discretion to set aside the conviction; and, assuming that his sole reason for doing so was the marriage of the parties, we think his action in this regard entirely proper, if not, indeed, highly commendable. There is no suggestion, either in the pleadings or evidence, that there was any agreement or attempt to influence his action further than as such action was influenced or controlled by the consummation of the marriage.

We feel confident therefore in the view that no part of the consideration for the deed was an illegal agreement to stifle prosecution, and conclude that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes