# CHARLESTON.

CHAFIN, ADM'X. V. NORFOLK & WESTERN RAILWAY CO.

Submitted September 18, 1917.   Decided September 25, 1917.

1. TRIAL—*Demurrer to Evidence—Ruling.*

Upon demurrer to evidence by defendant, if the plaintiff's evidence is sufficient to sustain his case, oral evidence of the demurrant conflicting with that of the demurree is ignored, and the demurrer overruled, unless the oral evidence of the demurrant be so clearly preponderant over that of the demurree that the verdict for the demurree would be set aside.   (p. 707).

2. ABATEMENT AND REVIVAL—*Death of Party—Employers' Liability Act—Right of Action.*

At common law the right of action for an injury to the person is extinguished by the death of the injured party.   The purpose of the act of Congress approved April 22, 1908, as amended by the act of Congress approved April 5, 1910, commonly known as the "Employers' Liability Law," is to give a right of action for the benefit of certain relatives, dependent upon the employee wrongfully killed, for the pecuniary loss to them resulting from his death, and also to give an employee, wrongfully injured, a right of action therefor, which shall survive, in case of his death, to the same beneficiaries.   (p. 708).

3. DEATH—*Federal Employers' Liability Act—Action by Beneficiary—"Pecuniary Loss."*

The pecuniary loss recoverable under the act of Congress known as the Employers' Liability Law, by one dependent upon the employee, wrongfully killed, must be a loss which can be measured by a pecuniary standard, and does not include an inestimable loss, such as loss of society and companionship, or the care and advice of a husband.   (p. 709).

4. SAME—*Federal Employers' Liability Act—Damages.*

Damages under the Employers' Liability Law should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased employee.   (p. 709).

5. SAME — *Federal Employers' Liability Act — Damages — Present Worth.*

A given sum of money in hand is worth more than the like sum payable in the future; and where a verdict is based upon the deprivation of future benefits, the ascertained amount of these should ordinarily be discounted so as to make the verdict equivalent to their present value.   (p. 710).

6.  SAME—*Federal Employers' Liability Act—Pecuniary Damages—Excessive Verdict.*

The verdict of a jury will be set aside as excessive, in an action for damages under the Employers' Liability Law of Congress, if it appear that in ascertaining the amount, the jury proceeded upon a wrong theory, or violated some rule of law governing the case, and thereby found more than the pecuniary injuries, or that the verdict is so excessive as to indicate partiality, passion, or prejudice in the minds of the jurors.   (p. 711).

7.  SAME—*Federal Employers' Liability Law—Damages—Amount.*

A recovery under the Employers' Liability Law of Congress must be limited to compensating those relatives for whom the administrator sues, who are shown to have sustained some pecuniary loss; and while a judgment for a claim under said law may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss; this apportionment is for the jury to return, when requested so to do. (p 711).

8.  NEW TRIAL—*Excessive Damages—Amount.*

In an action for personal injuries, where there is a demurrer to the evidence by the defendant, and there is no error in the trial in so far as it determines the liability of the defendant, but there is error in ascertaining the amount of damages to which the plaintiff is entitled in the action, the two issues are distinct and separable, and a new trial may be granted, limited to ascertaining the proper amount of damages, and when so ascertained, judgment thereon for the plaintiff may be entered.   (p. 712).

Error to Circuit Court, Mingo County.

Trespass on the case by Tennessee Chafin, administratrix of the estate of C. C. Chafin, against the Norfolk & Western Railway Company.   Judgment for plaintiff, and defendant brings error.

*Reversed and remanded, with trial limited to a single issue.*

*Theodore W. Reath* and *Holt, Duncan & Holt,* for plaintiff in error.

*Wiles & Bias,* for defendant in error.

WILLIAMS, JUDGE:

This is an action of trespass on the case, based upon the Employers' Liability Act of Congress, instituted in the cir-

cuit court of Mingo county, West Virginia, by Tennessee Chafin, Administratrix of the estate of C. C. Chafin, deceased, against the Norfolk & Western Railway Company, to recover fifty thousand dollars damages for the death of the said C. C. Chafin, alleged to have resulted from the wrongful act of the defendant railway company.

On the 26th day of May, 1913, C. C. Chafin was a yard conductor upon the yards of the defendant company, located at Williamson, Mingo county, W. Va., and, as such conductor, was engaged on the night of that day in switching a caboose from the west end of the middle yard to the east end of the north yard. The yard engine under his control had been coupled to the caboose, and was backing over a yard track known as the "old main line", with the caboose in front, eastward, and in the direction of the east end of the north yard, where another caboose was to be picked up. Chafin and the brakeman of his crew were riding with lanterns in their hands on the front platform of the caboose, which was being shoved along the track in question, and came into collision with a loaded freight train from which the engine had been detached, and which had been left standing or stored upon this track, and Chafin was crushed between the caboose and the end of the freight train and instantly killed. It was night time, and the yard engine was backing at the rate of from six to eight miles per hour. Chafin was in command of his switching crew, and directed its operations. He had received orders to do switching, and no instructions had been given him by the yard master as to which track he should take in going from one part of the yard to the other. The old main track over which he was backing, was traveled both ways, east and west, by yard engines on occasions. It was likewise used for the purpose of switching cars thereon.

Chafin left a widow surviving him, and one child *en ventre sa mere*, which was subsequently born, and was about seventeen months old at the date of the trial. The widow, Tennessee Chafin, was appointed administratrix of his estate, and brought this suit, to recover damages for the benefit of herself and child, they being the sole dependents. At the

time of his death Chafin was about twenty-six years of age, and his wife was about the same age.

The declaration charges the four following distinct grounds of negligence against the defendant railway company:

First, that the company failed to exercise reasonable care in the employment of competent officers, agents and employees;

Second, that it failed to establish proper rules for the government of the yard;

Third, that it failed to furnish safe tracks, engines, cars, equipment, etc., in the yard where Chafin was at work; and,

Fourth, that it negligently permitted one of its tracks to become blocked with loaded freight cars in the night time, without any light or danger signal thereon, which track Chafin was under the necessity of using, and, while so using it carefully and without fault of his own, ran into the cars so blocking it, and was killed.

The defendant pleaded not guilty, upon which issue was joined, and thereupon the case was tried to a jury, and after the evidence both for the plaintiff and the defendant had been introduced, the defendant demurred to the plaintiff's evidence, in which demurrer the plaintiff joined, and thereupon the jury returned a conditional verdict for the sum of $19,000.00 in favor of the plaintiff. The defendant then moved the court to set aside the verdict of the jury because it was contrary to law and the evidence, as well as contrary to the act of Congress in such cases made and provided, and because the damages were excessive.

It is certain that the death of Chafin was caused by the negligence of some one. Conceding that he had the right to use that track for the purpose he did use it the night of the accident, yet if he knew the track was liable to be blocked, and if it was his duty to provide for the safety of his train without notice from any one whether or not the track was obstructed, and he voluntarily took the risk of the track being free from obstructions and provided no sufficient means for the protection of his train, then the negligence was his. But on the contrary, if Chafin had the right to use that track at the time for the purpose for which he used it, and it was

obstructed by cars standing on it, and it was the duty of the yard master to notify him that the track was obstructed, in time for him to provide for the safety of his train, and the yard master knew the track was obstructed and knew that Chafin would rely upon him for such information, and that in the absence of such notice would assume that the track was open, and that he failed to notify Chafin, then the yard master was at fault.

Counsel for defendant were of opinion that the evidence on this point was such that there should be judgment for the defendant, and demurred to the evidence. By the demurrer to the evidence the case was withdrawn from the jury, and the trial court was required to observe the rules established by this court, by a long line of decisions, namely, in the cases of *Barrett* v. *Coal Co.*, 55 W. Va. 395; *Mannon* v. *Railroad Co.*, 56 W. Va. 554; *Shaver* v. *Edgell*, 48 W. Va. 502; *Gunn* v. *Railroad Co.*, 42 W. Va. 676; *Kelley* v. *Railroad Co.*, 58 W. Va. 216; *Robinson* v. *Sheets*, 63 W. Va. 394. In *Kelley* v. *Railroad Co., supra,* the rule is fully and correctly stated as follows: "Upon demurrer to evidence by defendant, if the plaintiff's evidence is sufficient to sustain his case, oral evidence of the demurrant conflicting with that of the demurree is ignored, and the demurrer overruled, unless the oral evidence of the demurrant be so clearly preponderant over that of the demurree that a verdict for the demurree would be set aside."

There is no conflict in the evidence as to the employment of the deceased, or as to when or how the accident occurred. The only question on this phase of the case is whether or not the defendant is responsible for the accident. Was it caused by defendant's negligence? It is conceded that the defendant's yard master, who had general control of the men working in the yard, knew that this track was obstructed at the time of the accident, and that he gave no information of this to Chafin. It is also proved and not contradicted that the car standing on the track had no light on it, nor was there any other means provided to give warning of the obstruction. Was it the duty of the defendant to give such notice, or to provide means of warning to the deceased, and in the ab-

sence of such notice or warning, was the deceased justified in assuming that the track was clear? Upon this point the evidence is irreconcilably conflicting. The plaintiff introduced a number of witnesses who testify in substance, that when a "lead" was blocked, it was the duty of the yard master to notify the yard conductor or provide warnings, and that in the absence of such notice or warnings, the conductor would expect the "lead" to be clear. This is contradicted by a number of defendant's witnesses. The evidence is oral and contradictory. It is very clear that there is no such preponderance of the evidence of the defendant over that of the plaintiff as would authorize the trial court to sustain the demurrer to the evidence, or that would justify the court in disturbing the verdict for such reason.

It is insisted by defendant that even if the plaintiff is entitled to recover anything, the verdict is excessive.

This proceeding is founded on an act of Congress; approved April 22, 1908, as amended by the act of Congress, approved April 5, 1910, commonly known as the "Employers' Liability Law." This statute does not fix the limit as to the amount of damages recoverable, and provides (Sec. 9) that a cause of action, accruing to the injured employe, shall survive to the beneficiaries therein named, but that there shall be but one recovery for the same injury. Accordingly it has been held that the administrator may recover in the same action not only for the pecuniary loss sustained by the beneficiaries, but also damages on account of conscious pain and suffering of deceased, in case the fatal accident did not produce immediate death. *Kansas City Sou. Ry. Co.* v. *Leslie, Adm'r.,* 238 U. S. 599; *St. Louis, I. Mt. & Sou. Ry. Co.* v. *Capital Trust Co.,* 237 U. S. 648; and *Great Northern Ry. Co.* v. *Capital Trust Co.,* 242 U. S. 41. In such a case there is an element of damages which can not be ascertained by any fixed rule of measurement, and which must therefore be left very largely to the judgment of the jury. However, no such element affects the amount of damages recoverable in this case. According to plaintiff's averment, as well as her proof, no time intervened between the fatal accident and the death of deceased, and there could have been

no conscious suffering and no cause of action to survive. Hence, plaintiff can recover only pecuniary damages, which can be measured by some reasonable standard.

The inquiry is: What pecuniary loss did the beneficiaries suffer by the death of the deceased? It can not be more than the loss which they have sustained by reason of the deprivation of the pecuniary benefits which they might reasonably have received from the deceased if he had lived. See *Mich. Cent. R. R. Co.* v. *Vreeland,* 227 U. S. 59. The Court of Appeals of New York, in *Tilley* v. *Hudson River R. Co.,* 24 N. Y. 471, at page 476, has aptly defined pecuniary damages as follows:

"The word 'pecuniary' was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though most painful and grevious to be borne, cannot be measured or recompensed by money. It excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measuse of value." See also 29 N. Y. 252.

If the verdict is for more than the widow and child could have reasonably expected to receive from the deceased, if he had not died from the injuries, then it is excessive, and should have been set aside on defendant's motion. In ascertaining whether it is excessive we must be governed by the rules and principles generally followed in similar instances.

Deceased was about 26 years old at the time of his death. He had regular employment and was earning about $1,410.00 per annum, and spending most of it on his family, which, of course, included himself. His life expectancy was about 38 years. The law requires no more of the defendant than that it provide a fund which will supply the pecuniary aid to the widow and child, which they could have reasonably expected from the deceased had he lived. The view most favorable to the plaintiff is to assume that deceased would have lived 38 years, that he would have continued without interruption to earn $1,410.00 per annum, and would have continued to be equally as liberal in the support of his family as he had been up to the time of his death. The child was

not born until after its father's death, and the evidence does not disclose what part of the earnings of the deceased was spent on the wife, except in a general way and as a member of the family.

Plaintiff is not entitled to recover a greater sum than will produce annually, for the wife during the 38 years life expectancy of her husband, and also for the child during a period of 21 years, the time it could reasonably expect pecuniary benefits from its father, what both would reasonably expect from the deceased had he lived, the principal sum so provided for the two beneficiaries to be exhausted by such annual payments at the expiration of the deceased's life expectancy. In other words, such a sum as will purchase annuities equal to what they reasonably expected to receive from deceased for the periods of 38 and 21 years respectively. Upon this subject the Supreme Court of the United States, in a late case, has said:

"Damages under the Employers' Liability Act should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased employee. A given sum of money in hand is worth more than the like sum payable in the future; and where a verdict is based on the deprivation of future benefits, the ascertained amount of these should ordinarily be discounted so as to make the verdict equivalent to their present value." *C. & O. Ry. Co.* v. *Kelly,* 241 U. S. 485.

There is nothing in the case to indicate that the child could reasonably expect to receive anything from the father by way of support, after it reaches the age of 21 years. Therefore, the verdict, under the proof as it now appears, should be based on an allowance for the wife for the full time of the husband's expectancy of life, and for the child until it reaches the age of 21 years. And the aggregate amount of the judgment should be a sum, the present value of which would be equal to the future pecuniary benefits of which the wife and child were deprived by the death of the husband and father, taking into consideration the earning power of the money paid in a lump sum.

Assuming that the husband would have continued to earn $1,410.00 every year for 38 years, that he would have spent that sum equally for the benefit of his wife, his child and himself, and that the sum paid at once would earn 4% per annum, it would require about $16,000.00, (if our calculation is accurate, the sum of $15,695.63), to provide the benefits the wife and child could reasonably expect from the deceased; and assuming that money would earn only 3 1/2% it would require a little more, to-wit, $16,703.38. There is no evidence in the record respecting the earning power of money invested for a long period in good and stable securities, and it may be that neither four per cent. nor three and one-half per cent. is the proper rate of interest. But any less rate than 3-1/2% we think would be unreasonably small, in .view of the comparatively recent and numerous sales of large amounts of municipal bonds for permanent roads, bearing as much as 5% interest. We do not say what the net earnings of the money should be, or what portion of the fund should go to each of the beneficiaries, but the foregoing illustration is to show that, upon any reasonable hypothesis, the verdict must necessarily include something more than mere pecuniary loss. $19,000.00 will much more than compensate the widow and child for the pecuniary loss they have sustained, and, therefore, we are constrained to set it aside as being excessive.

Counsel for plaintiff contend that the verdict should not be set aside, unless it is so far beyond what is just and proper as to evidence passion, prejudice, partiality, or corruption of the jury. Our decisions contain many such expressions, but they must be applied to the facts of the particular cases. In the case of *Ogg* v. *Murdock*, 25 W. Va. 139, the verdict was set aside as excessive, because it appeared to the court that the jury, in making up its verdict, had misapplied the law governing the case. The rule on this subject is more fully and accurately stated in 13 Cyc. 375, 376, as follows:

"The rule has sometimes been thus stated: to justify interference by the court with the verdict of the jury, it must appear that some rule of law has been violated, or else that the verdict is so excessive or grossly inadequate as to indicate

partiality, passion, or prejudice in the minds of the jurors.''

The jury must have ascertained the amount of their verdict in this case according to a wrong theory.

Excessiveness of the verdict being the only error demanding reversal of the judgment, there would seem to be no necessity for a re-trial of the principal issue, that is, to ascertain whether or not the plaintiff is entitled to recover anything at all in the action. There has been a full and complete hearing on that branch of the case, and we find no fault with the judgment in respect thereto. The error is in the ascertainment of the amount of damages. The two matters are distinct and separable. When the only error relates solely to the quantum of damages, there would seem to be no sufficient reason for a new trial to determine again the right of recovery. In passing upon the entire case logically the jury would ascertain (1) whether plaintiff is entitled to recover anything, and (2) if so, how much? The second proposition is wholly separate and distinct from the first. In *Moss* v. *Campbell's Creek Railroad Co.*, 75 W. Va. .62, we carefully and fully examined this question and reached the conclusion that a new trial may be limited. The rule and the reason for it is clearly stated in 2 R. C. L. 287, as follows:

''Probably from a desire to eliminate· unnecessary litigation, and in the exercise of the discretion with which the appellate court is invested with respect to the granting of new trials, it is undoubtedly the present general rule, in remanding a case for a new trial, either by the court or a jury, when error exists only as to one or more issues and the judgment in other respects is free from error, to limit the new trial to the issues affected by the error.''

To this statement of the law may be added by way of caution what the Supreme Court of North Carolina has said on this subject:

''It should clearly appear that the matter involved is entirely distinct and separable from the matters involved in the other issues, and that the new trial can be had without danger of complications with other matters.'' *Benton* v. *Collins*, 125 N. C. 83.

We will therefore reverse the judgment, set aside the verdict and remand the cause, with direction to again submit the case to a jury for the purpose only of ascertaining the amount of damages the plaintiff is entitled to recover under the principles herein enunciated, and to enter judgment for the plaintiff therefor.

The jury were not requested to apportion the damages, and did not apportion them between the two beneficiaries. It would unquestionably have been their duty to do so, if they had been so requested. But it has been held that it is not error for them to fail to make such apportionment, when they have not been requested so to do. *Central Vermont Ry. Co.* v. *White, Adm'x.,* 238 U. S. 507. The same rule has been followed by the state courts under state statutes similar to the Federal Employers' Liability Act, allowing one recovery for the benefit of several dependents. *N. & W. Ry. Co.* v. *Stevens' Admr.,* 97 Va. 631; *International & G. N. R. Co.* v. *Lenham and wife,* (Tex. Civ. App.), 72 S. W. 619; and *Devine* v. *Chicago, R. I. & Pac. Ry. Co.,* 266 Ill. 248. No tribunal is better qualified to apportion the damages than the jury who are trying the case, and it is always proper to require them to do so by their verdict. In fact they must necessarily ascertain the separate pecuniary loss of each beneficiary, in order to determine the gross amount of damages recoverable, and no additional evidence or different calculation would be required to enable them to make the apportionment.

*Reversed and remanded.*