Argued December 6, affirmed December 18, 1917.

# OLSON *v.* SAXTON.*

(169 Pac. 119.)

**Appeal and Error—Review—Exceptions.**

1. The action of the trial court in ordering the testimony to be taken by the court reporter, while irregular and improper, cannot be reviewed, where no objection or exception was saved at the time or after the return of the judge to the bench; for exceptions are necessary for errors to be reviewed.

**Trial—Conduct—Hearing of Evidence.**

2. It is improper for the trial judge to vacate the bench and direct the parties to present their testimony before the court reporter.

[As to absence of judge during trial as reversible error, see note in 122 Am. St. Rep. 721.]

**Contracts—Validity—Immoral Contracts.**

3. Where plaintiff, a married man, on the strength of an agreement by defendant, a woman, to marry him on procuring a divorce from his wife, coupled with a reciprocal promise on his part, advanced money to defendant and performed services for her benefit without any expectation of reimbursement, the transaction was immoral and illegal, and being further tainted by the fact that the parties indulged in meretricious relations, so that plaintiff, on defendant's refusal to carry out the agreement, cannot recover on notes the consideration of which was the services and funds advanced.

[As to validity of promise of marriage, see note in Ann. Cas. 1914A, 695.]

**Breach of Marriage Promise—Actions—Burden of Proof.**

4. One asserting a breach of marriage promise has the burden of proving the same.

**Breach of Marriage Promise—Actions—Evidence.**

5. In an action for damages for breach of marriage promise, plaintiff asserting that after a new promise by defendant to marry him he destroyed notes evidencing her indebtedness, evidence *held* insufficient to establish such promise.

From Multnomah: HENRY E. McGINN, Judge.

Action by Arthur P. Olson against Mollie M. Patton-Saxton, to recover damages for a breach of marriage

---

*Authorities discussing the question of agreement to marry on death or divorce of present husband or wife are collated in a note in 52 L. R. A. 660.

On effect of temporary absence of judge, when fatal to trial, see note in 41 L. R. A. 569.       REPORTER.

promise. From a judgment in favor of defendant, plaintiff appealed. Affirmed.

Department 2. Statement by Mr. Chief Justice McBride.

This was an action for breach of promise of marriage. The complaint alleges in substance that about September 19, 1909, the defendant, for value, executed and delivered to plaintiff three promissory notes for $500 each, with interest thereon at 5 per cent per annum, and that on December 25, 1913, the notes were destroyed by plaintiff and defendant; that in consideration of the surrender and destruction of said notes defendant then and there promised that she would thereafter marry plaintiff, and six months was a reasonable time for defendant to carry out said promise; that plaintiff was of marriageable age, ready, willing and able to marry defendant and that defendant was able to marry plaintiff, but that about September 5, 1914, she in disregard of her contract, married one John W. Saxton against plaintiff's wishes and to his damage in the sum of $1,594.00.

The defendant answered denying the contract of marriage, admitting the execution of the notes and the destruction thereof, and alleging that there was no consideration for the notes given plaintiff. It was further alleged that prior to December 25, 1913, plaintiff with malicious intent, made statements to the relatives and friends of defendant to the effect that defendant was dishonest and of lewd character, all of which statements were false and in consequence thereof, defendant was greatly injured, defamed, humiliated and degraded, and endured great mental anguish and suffering; that thereafter defendant confronted plaintiff and charged him with making these false and de-

famatory statements, and plaintiff thereafter confessed that he had made them and that they were false and that he had thereby injured defendant irreparably, and expressed a desire to make reparation therefor, and for that purpose they destroyed said notes voluntarily and without any request of any kind from plaintiff.

The parties waived a jury and the case was tried before the court. Before the trial had proceeded to any great length, the court stated the plaintiff would not get very far in that court with that case; that he didn't care to hear the testimony, but directed that the parties take it before the court reporter, and retired from the bench. Subsequently and during the examination of the defendant the Judge returned and heard the conclusion of the testimony, and about two weeks thereafter made findings and rendered judgment in favor of defendant. There was no exception saved to the order of the court directing the testimony to be taken before the stenographer, nor any exception saved during the trial except a general exception to giving and entering judgment for defendant. There was another exception made apparently for the first time in the bill of exceptions, namely, that the court erred in refusing to hear the testimony and especially the testimony of plaintiff, but this objection and exception were evidently not taken during the trial and must be disregarded.

There were no objections to the findings nor any request for other or different findings. The plaintiff appeals.        AFFIRMED.

For appellant there was a brief over the names of *Mr. J. W. Oberender, Mr. Edwin G. Amme* and *Mr.*

*Joseph Van Hoomissen,* with oral arguments by *Mr. Oberender* and *Mr. Amme.*

For respondent there was a brief and an oral argument by *Mr. William H. Wilson.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1, 2. The action of the court in ordering the testimony to be taken by the court stenographer in the absence of the judge, was certainly irregular and had an objection been made thereto and exception saved, or even had such an objection been urged and an exception saved after the return of the judge to the bench, we would be inclined to consider it, but neither of these things were done.

The alleged errors were not taken advantage of by objection and exceptions at the trial, and will not be considered here. As remarked by Mr. Chief Justice WALDO, in *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. 309):

"It is not error simply but error legally excepted to, that constitutes ground for reversal."

The court reserved its decision upon this case for more than two weeks after the hearing, and it is more than probable that the judge followed the not unusual practice of circuit judges and had the testimony read to him by the stenographer before rendering his final decision.

3. The testimony, however, is all here and we think it fully sustains the findings. The plaintiff, who was at that time a married man, became acquainted with defendant in 1905 in Alaska, and as he states met her "off and on" for several years and up to 1908, when he called upon her in Portland and was asked by her to

86 Or.—43

ship her piano from Alaska, which he did and received a letter of thanks, and thereafter had some correspondence with her. Later there was a lull in the letter writing but he finally received a letter from her from Culver, Oregon. From Alaska he sent her from time to time $210. In August, 1911, he met defendant in Portland by agreement, and he says they talked matters over "in a business way and in a married way." He told her how much money he had (over $1,300) and she said "that will help a whole lot." The conversation between them, as he says, resulted finally in him giving her a sum of money ($500) and doing labor in fixing up her homestead, and later building her a house on some lots she had purchased in the town of Multnomah, the consideration for these things being that she would marry him when he had obtained a divorce from his then wife. In the meantime they discounted the future marriage by meretricious intercourse in anticipation of the future happy event. Then plaintiff went to British Columbia and engaged in some sort of business there and in January (year not named) defendant followed him there and was angry that he had not procured his divorce. Later she wrote him she had consulted an attorney in Portland, who had told her that plaintiff could get a divorce in Oregon, and on February 12, 1912, he returned to Portland and was advised to stay in the state one year before applying for a divorce, which he did. It was during this interval that he cleared the lots at Multnomah and erected the building heretofore referred to. The relations between them continued as before and when the building was completed defendant moved into it and plaintiff resided in the city but saw and visited her frequently. About June, 1912, defendant went to the beach, plaintiff sending her a little money while there. In July she

returned for a short time, and when she returned she told him it was ''all off'' with their friendship. Plaintiff told her he had seen an attorney and that he could get a divorce very easily, but she went away and about September 1, 1912, notified him to vacate the house, which he did. When she returned they had a meeting and plaintiff told defendant he would marry her as soon as he got a divorce, but she said it was no use, that they had just as well settle up, and about September 17, 1912, plaintiff presented a bill for $1,700 for work and labor performed and money loaned defendant, and, as plaintiff claims, she argued there should be a deduction of $5 for each act of sexual intercourse and the claim was finally lumped off at $1,500, for which defendant gave the promissory notes mentioned in the complaint. Later plaintiff secured a divorce.

We have given a fair summary of the testimony up to this point and it indicates clearly that the money was originally advanced upon the strength of a promise by plaintiff that he would obtain a divorce from his wife and marry defendant, and a reciprocal promise on the part of the defendant that she would marry plaintiff when he had so been divorced. The agreement, if made, was grossly corrupt, illegal, and immoral. The money received by defendant from plaintiff, and the services rendered by him to her, were not advanced or rendered with any expectation or agreement to repay them, except that involved in the immoral contract of a married man to get a divorce from his wife, and thereafter marry defendant, and the further consideration of illicit intercourse. Plaintiff could not get rid of the taint of illegality that hung around the transaction by presenting a bill for services rendered and money advanced, and taking notes for such sums. The courts were not created to be used

by lawbreakers to recover money paid out upon such immoral and illegal considerations, and it is evident that had plaintiff kept the notes and sued upon them the considerations above mentioned would have been sufficient to defeat a recovery: 1 Page on Contracts, sec. 512.

4, 5. Plaintiff, however, does not rely upon the original promise to marry, which he says was made before he obtained the divorce, but upon an alleged new promise which he claims defendant made him after he had obtained a divorce and was free to contract a marriage. Upon this branch of the case the burden of proof was upon him to establish the new promise by a preponderance of evidence. He swears defendant made such a promise, while she testifies just as positively that she did not. It is quite as probable that she is telling the truth as he, and there is no corroboration of either. He has failed therefore on the vital point in his case, and viewed either from the standpoint of the law or from that of the facts, his appeal must fail.

Judgment affirmed.                              AFFIRMED.

MR. JUSTICE BURNETT, MR. JUSTICE McCAMANT and MR. JUSTICE MOORE concur.