## PETERS BRANCH OF INTERNATIONAL SHOE CO. v. BLAKE et al. ELY & WALKER DRY GOODS CO. v. SAME.

No. 9424—Opinion Filed Nov. 19, 1918.

Rehearing Denied Dec. 31, 1918.

(176 Pac. 892.)

**1. Appeal and Error—Question of Fact—Verdict—New Trial.**

Upon controverted matters of fact this court will not grant a new trial, where there is competent evidence which reasonably tends to support the verdict of the jury.

**2. Trial—Action for Price—Requested Instructions.**

We have examined the requested instructions in this case, and, as well, those given to which exceptions were saved, and are of the opinion those requested were properly refused and those excepted to were properly given.

**3. Appeal and Error—Trial—Absence of Trial Judge—Waiver of Error.**

During the trial of a case it is error for the trial judge to absent himself from the room where the trial is in progress so as to lose immediate and instant control over the proceedings; but, where an exception to such misconduct of the trial judge is not at the time saved, such error will be deemed to have been waived.

(Syllabus by Springer, C.)

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by the Peters Branch of the International Shoe Company against Grace A. Blake, administratrix of the estate of W. B. Blake deceased, and another; and action by the Ely & Walker Dry Goods Company against the same defendants. Cases consolidated for trial, and verdict and judgment for defendants, and motion for new trial overruled; and plaintiff in each case brings error. Affirmed.

Wilson, Tomerlin & Buckholts and McKeever & Moore, for plaintiffs in error.

P. C. Simmons, for defendant in error administratrix.

Opinion by SPRINGER, C. The parties will be referred to as plaintiff and defendant as they appeared in the court below.

The action of the plaintiff Peters Branch of the International Shoe Company is upon an account presented to Grace A. Blake, as administratrix of the estate of her deceased husband, W. B. Blake, for goods, wares, and merchandise sold and delivered; it being alleged that the merchandise was sold to the partnership, Blake-Green Mercantile Company, of which firm it is alleged that W. B. Blake was a member during his lifetime, and Grace A. Blake was the duly qualified and acting administratrix of the estate of her deceased husband, the account being for $779.25, and the same having been rejected by the administratrix on the 30th day of April, 1914.

The action of Ely & Walker Dry Goods Company was upon a like bill for merchandise presented to the administratrix and by her disallowed on the 2d day of March, 1914; the same being for the sum of $494.80.

The petition of the last-named plaintiff alleges the appointment of Grace A. Blake as the administratrix of the estate of W. B. Blake, deceased, and of the presentment and disallowance of the account. To the petitions, Grace A. Blake, as administratrix of the estate of W. B. Blake, deceased, filed a separate answer in each case, in which she denied generally and specifically all the allegations contained in the petitions, except she admitted that W. B. Blake died on November 19, 1913, and that at the time of his death he was a resident in Grady county, in the state of Oklahoma, and admitted that she was the duly appointed, qualified, and acting administratrix of his estate, and that the plaintiffs had presented their claims to her, and that she had disallowed the same.

The administratrix denied that W. B. Blake and J. F. Green were partners at the time it is alleged the goods, wares, and merchandise were sold to the firm of Blake-Green Mercantile Company and further alleged that, if in fact such partnership ever did exist, it had been dissolved long prior to the time the goods, wares, and merchandise were sold to said firm, and further alleged that the plaintiffs had due notice and knowledge of such dissolution, prior to the time the goods were sold, and further denied that any credit was extended said firm by reason of said partnership existence, and alleged that the goods were sold and credit extended to said firm knowing that J. F. Green was the sole and only member of the firm, and that the credit was extended solely to him, and the goods sold personally to him, and not to any

partnership of which W. B. Blake was a member.

The answer of the administratrix is verified by affidavit.

The cases were consolidated and tried to the court and a jury, which returned a verdict in favor of the administratrix, and, a motion for a new trial having been duly presented and overruled, the court rendered judgment in accordance with the verdict, and the case is now before us for review.

The evidence in this case shows that the store referred to, the Blake-Green Mercantile Company, was originally located at Cleo in Major county, Okla., and that it was in charge of the defendant Green. The evidence discloses that W. B. Blake resided at Aline, Okla., in that county where he was engaged in the mercantile business and was interested in a bank, and had other business interests in that part of the county. The evidence discloses that, whatever interest Blake may have originally had in the store referred to as Blake-Green Mercantile Company, he took no active part or interest in its management; that being left entirely to Green. The evidence discloses that he had at one time invested some money in the establishment; but just what his interest was, whether a partner or a creditor in some capacity, was a disputed question upon the trial of the case.

The record discloses that in the year 1913 Blake moved from Major county to Grady county. The contention by the administratrix is made that at about the time he moved from Major to Grady county, Okla., he sold out and disposed of his interest, whatever that was, in the Blake-Green Mercantile Company, to J. F. Green. It is claimed by the administratrix that, some time after Blake had disposed of his interest in the store to Green, the latter moved the stock of goods to Homestead in Blaine county, where he continued to transact business in the name of Blake-Green Mercantile Company.

The evidence in this case as to the time when Blake disposed of his interest to Green was conflicting. The claim being made by the creditors that the partnership continued in existence down to the time of Blake's death in November, 1913, or if there had been a dissolution of the partnership prior to the time of his death, they had no notice or knowledge of it. The claim of the administratrix was that the dissolution was effected about the middle of March, 1913, and the creditors had notice of such dissolution, and notwithstanding such notice afterwards sold the goods, the price of which is in controversy here, to Green.

The contentions thus made being controverted questions of fact, and the jury having found in favor of the administratrix upon the trial of the case, this court will not disturb the verdict of the jury.

It is next claimed that the court erred by refusing to give the following instruction:

"No. 3. The jury is instructed that by the evidence in this case it is admitted that the deceased, W. B. Blake, was a member of the partnership composed of J. F. Green and himself under the name of Blake-Green Mercantile Company from the date the evidence shows they begun business until about March 20, 1913, when it is claimed by the defendant Grace A. Blake, administratrix, that the partnership was dissolved by the selling on the part of Mr. Blake of his interest therein to J. F. Green. The court instructs you that as a matter of law the deceased's estate is liable for whatever you find remains unpaid and interest thereon at 6 per cent. per annum from the date the same became due for any merchandise sold by either of the plaintiffs which you find was sold prior to the date of said alleged dissolution."

There was no error of the court in refusing to give this instruction for the very good reason that the question, as to whether there ever was a partnership existence between W. B. Blake and J. F. Green under the firm name and style of Blake-Green Mercantile Company, was a disputed one, and for that reason alone the court was justified in refusing to give the requested instruction.

It was an admitted fact upon the trial of the case that Blake had invested some money in the enterprise known as Blake-Green Mercantile Company, but as to whether it was a partnership, and whether the relation of partnership between Blake and Green really existed, was a fact to be determined by the jury under the evidence adduced.

The creditors next complain that the court erred by refusing to give requested instruction No. 8:

"No. 8. Gentlemen of the jury, the court instructs you that, upon the death of a member of a partnership, it is the duty under the law of this state for the surviving partner to immediately make and return to the administrator of the estate of such deceased partner an inventory of the partnership assets and to give to such administrator a bond for the faithful accounting for the assets of said partnership, and it is his further duty to proceed to wind up the affairs of said partnership by sale and disposition of the assets and payments of the debts, and, in event of the failure or neglect of such surviving partner so to do, then it is the duty of the administrator of such deceased partner to require the same to be done, and no creditor of such partnership has the right or

authority under the law to require it to be done, and in this case if you find from the evidence, either that at the time of the death of the said W. B. Blake that there was a partnership then in existence or ever had been and these plaintiffs had dealings with said partnership at any time during its existence, or any time after its dissolution previous to the time they had notice of its dissolution, then and in that event the estate of W. B. Blake would be liable for the payment of this demand for the purchase price of such goods sold and delivered and credit extended, and the administratrix cannot excuse her failure to require said J. F. Green to have made such inventory and given such said bond by the fact that said creditors did not proceed against said partnership assets, and, if there has been any loss on the disposition of said assets, then and in that event such loss is the result of her own inaction in the matter."

The court did not err by refusing to give this instruction, for the reason it was specifically denied by the answer and controverted by the evidence of the administratrix that there was any partnership relation existing between Blake and Green at the time it is alleged the goods were sold, and the credit extended. If, as a matter of fact, there had ever been a partnership relation existing between Blake and Green, and that partnership relation terminated, as is contended by the administratrix, before the goods were sold and credit extended, and the creditors had notice of such dissolution, the administratrix could not require Green to return an inventory and appraisement of the store or stock of goods to her as such administratrix, nor could she require him to furnish a bond for a faithful disposition of the partnership assets, and for that reason the instruction was properly refused.

It is next contended that the court erred by giving instructions 1 to 8 inclusive.

"1. You are instructed that, under the statutes of the state of Oklahoma, the liability of a general partner for the act of his copartner continues, even after his withdrawal from the partnership, in favor of persons who have had dealings with and given credit to the partnership during his connection with it, until they have had personal notice of his withdrawal. to the extent to which such persons part with value in good faith and in the belief that said partner is still a member of the firm.

"2. In its legal sense, notice is either actual or constructive.

"Notice is actual when it is directly and personally given to the party to be notified.

"Notice is constructive when the circumstances known to him are such as ought reasonably to have led him to inquiry, and

mere rumors of the fact in the neighborhood are not notice, rendering it obligatory upon the party to investigate them.

"3. You are instructed that if you find from the evidence that W. B. Blake was not a partner in the Blake-Green Mercantile Company, during the time covered by the transaction upon which this action is based, but had been a partner in said business operating under the same name prior thereto, and that during his connection with said partnership the plaintiff in this case had like business dealings with the same, knowing his connections therewith, that the plaintiff in this case has the right to assume that the connection of W. B. Blake with said firm continued until it had personal notice to the contrary; and you are further instructed that the burden is upon the defendant in this case to prove by a fair preponderance from the evidence that W. B. Blake had withdrawn from said partnership prior to the time covered by the transaction upon which this action is brought, and that the plaintiff had notice of that fact prior to such time.

"4. The court instructs the jury that where a member of a partnership withdraws —if he fails to give notice of the fact—his liability continues, unless he can bring home notice to the person seeking to hold him liable; and that when retiring from a firm can terminate all future liability for its business by giving notice to those who have been accustomed to dealing with the firm, and as to all others by publishing a notice of the dissolution of the firm in the public newspapers of the neighborhood, or the retiring partner may escape liability by proving that persons, dealing with the firm after his retirement, had actual notice of his withdrawal.

"5. The court instructs the jury that if they find from the evidence that prior to the first sale of goods by the plaintiff being sued for in this action, that a partnership existed between W. B. Blake and J. F. Green, doing business under the firm and style of Blake-Green Mercantile Company; that J. F. Green was the active manager of the Blake-Green Mercantile Company; that he was acting within the apparent scope of his authority in ordering the goods, the purchase price of which is being sued for; and that the plaintiff extended credit on the standing of either or both of the partners; and you shall further find that the plaintiff had no notice of the dissolution of said firm— then the plaintiff is entitled to recover judgment against these defendants and each of them in the amount sued for, in accordance with the law as given you by the court in these instructions.

"6. You are instructed by the court that it is for you to determine, from all the facts and circumstances in evidence in this case, as to whether or not the alleged partnership called Blake-Green Mercantile Company was dissolved by W. B. Blake selling out his in-

terest therein to J. F. Green, and, if the said W. B. Blake did sell out, then as to whether or not the plaintiff, its traveling men or other representatives, learned of that fact. If you find from the evidence that W. B. Blake did sell out his interest in the business, and the plaintiff, its traveling men or other representatives, learned of that fact, then from and after acquiring such information the plaintiff had no right to sell goods on the credit of said W. B. Blake, and his estate would not be liable therefor.

"7. You are instructed that if the plaintiff received information from any source to the effect that W. B. Blake had sold out his interest in said alleged firm, called Blake-Green Mercantile Company, to J. F. Green, and which information was such as to cause a reasonably prudent person to believe that it was true, or which information was such or came from such a source that if diligently pursued would have disclosed to the plaintiff that the fact that W. B. Blake had in fact sold out his interest in said alleged partnership, then the plaintiff was required to act upon such information and investigate its truth, and, if it failed to do so, it is bound by all the facts which it would have learned if it had made such investigation.

"8. You are instructed that if you believe from the evidence in this case that the alleged partnership between W. B. Blake and J. F. Green was dissolved, and that after such dissolution the traveling salesmen or other agents employed by the plaintiff in carrying on its business learned of such dissolution, then you are instructed that the knowledge of such traveling salesman or agents of plaintiff would be the knowledge of the plaintiff in this case and that such salesman or agent or manager of the plaintiff had no right to sell such alleged firm or the said J. F. Green any goods upon the credit of the said W. B. Blake after learning and obtaining knowledge and information of such dissolution. You are further instructed that if you believe from the evidence in this case that the traveling salesman for this plaintiff company, or its credit manager or other agents authorized to transact its business, obtained knowledge that W. B. Blake had withdrawn from such alleged firm, called Blake-Green Mercantile Company, and that thereafter the said traveling salesman, credit manager, or other agents of the plaintiffs sold goods to the said Blake-Green Mercantile Company and sought to be recovered for in this case, then your verdict should be for the defendant Grace A. Blake, administratrix, and against the plaintiff in this case."

We are of the opinion that the court did not err by giving these instructions. In these instructions the court fully instructed the jury as to the law with regard to the liability of one who was or had been a partner. Where credit is extended by reason of such partnership and the notice necessary

to be given to creditors who had dealings with the partnership, and of the necessity of bringing home to them knowledge of the termination of such partnership before a partner can be absolved from liability. In any view of the pleadings and evidence adduced on the trial of this case, these instructions were as favorable to the creditors as they could reasonably expect.

It is next urged as error, misconduct of the trial judge in absenting himself from the courtroom during the argument of the case for a period of one-quarter of an hour. The first complaint made of the trial court absenting himself during the conduct of the proceedings was when a motion for a new trial was filed on the 29th day of January, 1917. It seems no objections or exceptions were saved to the action of the trial court at the time, but was raised by motion for a new trial. The allegations in the motion for a new trial were not supported by affidavit until the day it was acted upon, the 13th day of March, 1917, at which time one of the attorneys appearing for the creditors supported the allegation of the motion by his affidavit.

In their brief the creditors cited the case of Dehougne v. W. U. Tel. Co., 84 S. W. 1066, in which it is said:

"In civil cases the approved rule is that the mere absence of the judge during the progress of the trial, when no objection is made, will not necessarily require the granting of a new trial, when the absence is only for a few moments, and for a necessary purpose, and, in order for such absence to become reversible error, it must appear not only that objection was made to the judge's failure to suspend the trial, but that the absence of the judge resulted in some harm to the losing party.

"I was absent under these circumstances during the opening argument for the plaintiff, and during the greater part of the argument for the defendant."

This court, in passing upon this question in the case of Rutter v. Territory, 11 Okla. 454, 68 Pac. 507, in which case the presiding judge had left the bench and had gone into an adjoining room but had left the door open. the Supreme Court of the territory he'd that such conduct did not constitute reversible error.

The creditors in their brief also cite the case of Smith v. Sherwood et al., 95 Wis. 558,

70 N. W. 682, which case was reversed by reason of the fact the judge had absented himself during arguments of counsel without the consent of the parties. An examination of the facts, as disclosed by the opinion in that case, is altogether different from the facts presented by the record in this case. In the opinion it is stated:

"Upon one side it is claimed the judge was absent 1½ hours, and upon the other side it is claimed that the absence was only from 20 to 30 minutes. However this may be, it is undisputed that he was absent for a considerable time. Counsel seemed to have improved the time during the judge's absence to indulge in numerous acrimonious discussions. Objections were made to some of the statements made by the counsel who was addressing the jury, and in one instance, at least, the judge was sent for to rule upon the objection, which being done, he returned to the adjoining room," etc.

There is no allegation, either in the motion or in the affidavit in support of it, that any misconduct whatever transpired during the time the court absented himself during the argument in the case before us.

It is the duty of a trial judge to remain constantly in a position to exercise complete control over the case during the time any part of the trial is in progress. If a court absents himself from the room in which the trial is being conducted, he loses control over the trial during his absence, and thereby affords an opportunity for the intervention of error calculated to bring about a miscarriage of justice. While we believe it is error for the trial court to absent himself while the trial is in progress in such a way as to lose control over the proceedings, nevertheless, exceptions must be saved to the action of the court at the time; otherwise it will be treated as waived. Allen v. Ry. Co., 106 Iowa, 602, 76 N. W. 848; State v. Hammer, 116 Iowa, 284, 89 N. W. 1084; Gorham v. Sioux City Stock Yards Co., 118 Iowa, 749, 92 N. W. 698; Baxter v. Ray, 62 Iowa, 336, 17 N. W. 576; Hall v. Wolff, 61 Iowa, 559, 16 N. W. 710; State v. Porter, 105 Iowa, 677, 75 N. W. 519; Olson v. Saxton, 86 Or. 670, 169 Pac. 119; 17 Am. & Eng. Cyc. Law (2d Ed.) 719, 720.

We find no error in this record which substantially prejudices the rights of the creditors, and the judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.