FREDA SNODGRASS, *etc* v. CHARLESTON NUGRAPE COMPANY, INC., *A corporation*

(No. 7584)

Submitted April 18, 1933. Decided April 25, 1933.

(Petition for rehearing withdrawn June 6, 1933)

*Campbell & McClintic* and *Ernest K. James,* for plaintiff in error.

*Salisbury & Lopinsky,* for defendant in error.

MAXWELL, PRESIDENT:

This writ of error presents for review a judgment for plaintiff, based on a verdict, in the sum of $2,500.00.

Plaintiff, a girl of seventeen, was injured November 4, 1931, when a truck belonging to defendant collided with a school bus in which she was a passenger. A few hours after the accident, she was taken to a hospital where she remained until the next evening when she returned to her home. Dr. Herbert Garred, who examined her at the hospital, stated that her right thigh was swollen and bruised and ''some skin knocked off just below the knee''; that she was nervous and suffering from shock; that the x-ray disclosed no fractures; and that he gave her ''palliative treatment'' for pain and suffering. Upon returning to her home, she remained in bed two or three days and resumed her school attendance within a week.

Dr. Garred stated also that plaintiff came to his office again December 30, 1931, complaining of pain in the knee joint; that she was limping; that he did not see her again until June 25, 1932; that thereafter he saw her about once every two weeks until October 10, 1932, which was about three weeks before the case was tried; that he administered ''only efficacious therapy'' to her leg and ankle; and that the scar below the knee was permanent. He was asked whether the pain and limping

complained of by plaintiff was attributable to the injuries sustained in the accident and he replied, ''In all probability * * * it is probable.''

Three witnesses, one a sister of plaintiff, corroborated her in her statements that she limps occasionally; that she is extremely nervous when riding in automobiles; and that she cannot continue with her course in physical training at school as a result of the injuries sustained in the accident.

Dr. E. H. Swint, who examined plaintiff for the first time about a week before the trial, testified that there was a scar on her leg just below the knee but which was ''freely movable with the skin''; that there was ''no swelling'', no ''pain on pressure'', no evidence of an injury, other than the scar; that she was not nervous; that she did not limp nor complain of pain; and that he could find nothing ''to indicate cause for pain.''

One of the grounds urged for reversal is alleged excessiveness of the verdict. We are of opinion that this point is well taken. The foregoing recital from the evidence discloses that the plaintiff was only slightly injured. The evidence adduced to show nervousness and other deleterious results of the injury is very meager and unconvincing. Her attending physician's testimony is carefully circumscribed by ''probabilities''. He does not undertake to state a definite opinion as to wherein or how the injuries she received could produce the consequences of which she complains. In his diagnosis, her subjective symptoms were emphasized. Withal, however, the causal connection between her injuries and the alleged condition now sought to be emphasized is not clear. In such situation, a verdict of the large amount here involved is not properly grounded. The fact that a young school girl was injured through the carelessness and recklessness of an indifferent truck driver may have had an undue appeal to the jury, or the jury may have thought that it was warranted in imposing punitive damages. The declaration is not so drawn as to support punitive damages.

A verdict should be set aside on the ground of excessiveness when it is so large as to indicate that the jury was moved by prejudice, or partiality or some other improper consideration, or acted in a mistaken view of its duty. *Thomas* v. *Lupis*, 87

W. Va. 772, 106 S. E. 78; *Steel* v. *Development Co.*, 80 W. Va. 206, 92 S. E. 410; *Chafin* v. *Railway Co.*, 80 W. Va. 703, 93 S. E. 822.

After the introduction of testimony, while counsel for the plaintiff was presenting his closing argument to the jury, the trial judge retired from the courtroom to his chambers out of hearing of what was occurring in the courtroom. In his absence, controversy arose between counsel as to the propriety of portions of the argument. The judge was called back into the courtroom; whereupon counsel stated to him the nature of the difference which had arisen between them. Counsel for the plaintiff undertook to find justification for his remarks in certain remarks which counsel for defendant had made. The judge thereupon directed the jury "to disregard any argument of either side immaterial to the issues joined." On this writ of error, the point is made by the defendant that it was prejudiced by the said alleged improper argument of counsel for the plaintiff, and that the court's direction to the jury to disregard said remarks could not in the very nature of things remove from the minds of the jurors the impression which had been created by the alleged improper argument.

The arising of this serious difference of opinion between counsel as to propriety of certain phases of their oral argument to the jury forcefully illustrates the importance of a trial judge's presence throughout the argument. It is not surprising that counsel in the zest of their cause and in the heat of argument not infrequently develop irreconcilable views as to the propriety of phases of the argument. In the very nature of things this is to be expected.

The theory of our jury system is that a jury trial shall be presided over by a judge. That does not mean that a judge is expected to preside through part of a trial but need not preside through all of it. The argument of counsel to a jury on the merits of the case is as much a part of the trial as the introduction of evidence. Where, in the heat of oral argument by counsel, statements are made which the judge does not hear, there arises a situation of great seriousness, and this is presented in three important aspects: first, the dignity of the court is impaired and thereby public respect for the administration of justice is diminished; second, it is most diffi-

cult, if not impossible, for the judge, upon being recalled to the courtroom, to be put in possession of facts which will enable him to visualize the situation as it actually developed in his absence; and third, the judge is not in position to certify to the court of review what took place in his absence. As was tersely stated by the Oklahoma court in the case of *Shoe Co.* v. *Blake, post,* "It is the duty of a trial judge to remain constantly in a position to exercise complete control over the case during the time any part of the trial is in progress."

The courts of different states are not in accord as to the effect of the absence from the courtroom of the judge in a civil trial where no objection was made thereto at the time, but they all agree that it is the judge's duty to be present throughout all phases of the trial. *Caryl* v. *Buchmann,* (*Wis.*) 187 N. W. 993; *Horne* v. *Rogers,* (*Ga.*) 35 S. E. 715; *Shoe Co.* v. *Blake,* (Okl.) 176 Pac. 892; *City of West Frankfort* v. *I. O. O. F. Lodge,* (Ill.) 145 N. E. 711.

In the instant case the judge not having been present when the challenged remarks were made does not, of course, certify the nature of the remarks. They appear in the record only in affidavits of counsel which are incorporated in a bill of exceptions. A record cannot be made in this manner. *Caryl* v. *Buchmann, supra.* Inasmuch as the case must be reversed on the ground first above discussed, it will not be necessary to pursue this discussion further.

The judgment of the trial court is reversed, the verdict set aside, and a new trial awarded.

*Reversed and remanded.*