Argued October 19, 1975, reversed and remanded March 18, petition for rehearing denied April 13, 1976

LATHAM, *Appellant,*
*and*
LATHAM, *Respondent.*

547 P2d 144

*Alan K. Brickley,* Portland, argued the cause for appellant. With him on the brief were Peterson, Susak & Peterson, P.C., Portland.

*James K. Belknap,* Portland, argued the cause and filed a brief for respondent.

DENECKE, J.

## DENECKE, J.

This is an action on an express contract. The plaintiff alleged the parties were not married but were living together as husband and wife. She further alleged:

> "Between January, 1954 and July, 1973, plaintiff rendered services to the defendant, at defendant's special instance and request, by living with defendant, caring for and keeping after him, and furnishing and providing him all the amenities of married life. In consideration thereof, defendant agreed to pay to plaintiff one-half (1/2) of all the property, both real and personal, accumulated by both parties during the agreement. Plaintiff alleges on information and belief that the value of said property is $100,000.00 (One Hundred Thousand Dollars)."

The plaintiff further alleged she performed all conditions precedent but the defendant refused to divide any of the property accumulated.

The trial court sustained defendant's demurrer and the plaintiff appeals.

The defendant demurred on the ground that the plaintiff failed to state a cause of action. His contention was that the consideration was future illicit cohabitation which renders the entire contract void as against public policy.[1] The plaintiff does not challenge that the agreement alleged what is customarily thought to be included in the word "cohabitation," including sexual intercourse.

Defendant relies primarily on *Traver v. Naylor,* 126 Or 193, 268 P 75 (1928). In that case Miss Traver and Mr. Naylor were going to be married. He was shot and permanently injured. Miss Traver testified that when he was in the hospital he told her he was not physically fit to marry her. He promised her, however, that if she would take care of him for the rest of his life he would

---

[1] We did not consider a contention somewhat similar in deciding *York v. Place,* 273 Or 947, 544 P2d 572, 574 (1975). We held there that when a couple lived together although not married there was not an implied agreement by the man to pay for services rendered. This is the same rule that would be applied to a married couple.

devise her his entire estate. She agreed and when Mr. Naylor left the hospital he moved into her house where he lived his remaining nine years. She brought an action on his contract to devise her his estate.

We stated in *Traver v. Naylor,* supra (126 Or at 207): "Future cohabitation is a vicious consideration, and if it constituted any part of the consideration for the promise the whole contract is void." This statement was in accord with the state of the law at that time. 6 Williston, Contracts, 4940, § 1745 (1937), and 6A Corbin, Contracts, 621, § 1476 (1951).

The statement in *Traver* was dictum, not the holding. We held:

"The contention that plaintiff and decedent, at the time of entering into this contract, either contemplated or intended to cohabit as man and wife or that they ever did subsequently so cohabit together is not supported by the testimony of a single witness and is discredited by every fact and circumstance proven in the case. * * *." 126 Or at 207-208.

This is a startling statement. In June 1912, about a year and a half after Mr. Naylor started living in Miss Traver's house, Mr. Naylor was indicted and later convicted for lewdly and lasciviously cohabitating with Miss Traver. Upon appeal we reversed the conviction upon the grounds that evidence had been improperly received and an instruction had been erroneously given. We refused to hold that the case should be dismissed and remanded for a new trial. *State v. Naylor,* 68 Or 139, 136 P 889 (1913). We held there was ample evidence of guilt and stated in detail at least some of the evidence. The record in the criminal case was received in evidence in *Traver v. Naylor,* supra (126 Or 193).

In the criminal case, Miss Traver testified Mr. Naylor paid her $20 per month for her services. At the trial of *Traver v. Naylor,* supra (126 Or 193), she testified that was not true. She said she perjured herself

at the criminal trial because Mr. Naylor had said he would kill himself if she did not so testify.

We also held in *Traver v. Naylor,* supra (126 Or at 210):

> "But even if there had been proof that plaintiff's and decedent's relations had become improper after the contract had been entered into and while it was being performed by plaintiff, the existence of such relations would not have rendered the contract invalid because such relations were no part of the consideration of the contract. On its face, the contract was valid and could be completely performed without the doing of a single illegal act, and hence its validity would not be impaired by wrongful acts subsequently done which were not within the contemplation of the parties at the time of its making."

We have described the opinion and lives of Miss Traver and Mr. Naylor in detail in order to illustrate that while we stated the accepted law of the time, we went to some length to hold that a woman who lived with and cared for a man received her promised compensation.

A similar attitude of this court is evidenced in Dannells v. U. S. National Bank, 172 Or 213, 138 P2d 220 (1943). Ruby Caldwell made a claim in the estate of John Dannells including a claim on a note of John Dannells for $20,000. The trustee bank settled the claim. The decedent's wife and daughter-in-law brought this suit to rescind the settlement agreement and require the trustee to repay the amount it paid Ruby Caldwell in settlement.

Ruby's claim was based upon an agreement she and the decedent made in 1919. The decedent agreed to convey a home to Ruby, to buy her a new car, to pay any medical expense, to make monthly payments to her for her life or until she married, and to make a $10,000 devise for Ruby's benefit or any issue she and the decedent might have.

This court affirmed the dismissal of the suit. The

court made several answers to the wife's contention that the agreement was illegal because it was an agreement to resume illicit cohabitation. We stated:

"Upon a question whether such a consideration is valid or invalid, the general rule supported by the weight of authority is stated by Williston thus:

" 'The fact that past cohabitation is the motive for a promise will not invalidate it though such cohabitation is not in itself sufficient consideration.' Section 1745, Vol. 6, Williston on Contracts, p. 4940." 172 Or at 240.

We added:

"Under the common law, a promise made in consideration of past illicit cohabitation was valid if made under seal, but otherwise unenforceable because lacking in a real consideration. In Oregon, an agreement in writing, without a seal, for the compromise or settlement of a debt or controversy is as obligatory as if a seal were affixed. Section 2-806, Vol. 1, O.C.L.A. p. 318." 172 Or at 241.

We further held:

"Aside from the import of said exhibit 27, there is no direct testimony of immoral relationship between the decedent and Ruby Caldwell. There is no agreement that the parties thereto will illicitly cohabit in the future. There is no proof that they did so." 172 Or at 242.

Based upon these two cases, which are the only cases in Oregon on the issue, the attitude of this court has been that while the "general rule" was ostensibly adhered to, this court, by rather dubious reasoning, has held that the woman shall not be deprived of the benefit of the promises made by the man.[2]

We conclude that we should abandon dubious legal distinctions to accomplish what this court has believed in the past to be a just result. We hold that an agreement such as that pleaded in this case, is not void as against public policy. We are influenced to reach this result by the action of the Oregon Legislature which repealed ORS 167.015, which provided: "Any man and

---

[2]Olson v. Saxton, 86 Or 670, 675-676, 169 P 119 (1917), we do not regard as involving this same issue.

woman who lewdly or lasciviously cohabit or associate together when not married to each other, shall be punished upon conviction by imprisonment in the county jail for not less than one nor more than six months, or by a fine of not less than $50 nor more than $300."

This section was repealed when the criminal code was completely revised. The repeal was consistent with one objective of the legislature which was generally to remove all criminal sanctions from private consensual sexual activity between competent adults. Yturri, *The Three Rs of Penal Law Reform,* 51 Or L Rev 427, 435 (1972).

The application of the principle that such a contract will not be enforced has often resulted in the male keeping the assets accumulated in the relationship and the female being deprived of what she jointly accumulated. Although the parties have been jointly accumulating property for 19 years, that would be the result in this case if the principle were applied. While not condoning the parties' conduct, such a result seems to be unduly harsh.

For these reasons we hold that such an agreement is not void. We are not validating an agreement in which the only or primary consideration is sexual intercourse. The agreement here contemplated all the burdens and amenities of married life.

The only modern decision on the issue we have found is *Tyranski v. Piggins,* 44 Mich App 570, 205 NW2d 595 (1973). That court concluded, as we have, that agreements such as this are valid.

Reversed and remanded.