# Wyant *versus* Lesher.

Past cohabitation and the agreement of the father of the female that the obligor might marry his daughter, though she was of full age and thus competent to contract marriage without his consent, were a sufficient consideration for a bond conditioned for her proper treatment and that the obligor, her intended husband, would not desert her.

ERROR to the Common Pleas of *Franklin county.*

This was an action to January Term, 1850, by Jacob E. Wyant against John Lesher and Henry Lesher, on a bond executed by the defendants to the plaintiff.

John Lesher, one of the defendants, addressed the daughter of the plaintiff, and she being pregnant, he refused to marry her, and a prosecution was instituted against him. After his arrest he proposed to marry her, and the plaintiff required from him security that he would treat her well and not desert her. He, and the other defendant as his surety, executed the bond in suit, dated 23d October, 1851, which was in the penalty of $500. In the condition it was recited that the female had a child to said John

[Wyant *v.* Lesher.]

Lesher, born on the 2d or 3d October, and that Jacob E. Wyant, the father, agrees that the said John may marry his daughter "on condition that he treats her as a loving and affectionate husband ought to do, and not to desert her," to which the obligors assent and agree that if the said John Lesher, after marriage, "maltreat, abuse, or desert her," then the obligors to pay the sum of $500 for the use and support of the said Mary, and her heirs, &c.

In the declaration on the bond breaches were assigned to the effect that John Lesher, after his marriage, deserted his wife.

The pleas were payment with leave, &c., misrepresentation, &c., that Lesher did perform, that the female was of full age and competent to contract marriage without the consent of her father, that the bond was against public policy, and void, that there was no legal consideration to sustain it, and that he did not desert her.

The plaintiff's counsel asked the Court to instruct the jury that if they were satisfied that John Lesher, after his marriage, maltreated and deserted his wife, the plaintiff was entitled to recover on the bond.

KIMMELL, President J., briefly directed the jury "to return a verdict for the defendants."

Such direction was assigned for error.

The case was submitted.

In the argument of *Reilly* and *Nill,* for plaintiff in error, it was alleged that neither fraud, imposition, or mistake was proved in the case. It was to the advantage of Lesher to avoid a conviction. A contract of compromise between the reputed father of an illegitimate child and its mother, by which the father agreed to pay a stipulated sum for lying in expenses and for the maintenance of the child, was held to be valid: 9 *W. & Ser.* 69, Maurer *v.* Mitchell.

The consent of the father was not the consideration. It was the consent of the female to the marriage, and the arrangement of the prosecution, which was the consideration of the bond, and the sum forfeited was to go for her use and for that of her heirs. The father was but a trustee.

It is not against the policy of the law that a man shall support a woman whom he is about to marry, and her children. A husband having ill-treated his wife, gave her a note that if he again maltreated her, she should have £3000 for her own use. It was decreed that he pay the note: 2 *Ventris* 217. An agreement to provide for the wife, if necessary for husband and wife to separate, held to be valid: 2 *Vernon* 67; *Reeves Dom. Rel.* 94. It is not against the policy of the law to do what the law may compel.

[Wyant *v.* Lesher.]

*A. K. Cornyn,* for defendants in error.—Marriage should proceed
from free choice, and when a parent or guardian insists upon private
gain or security for it, the agreement should be set aside : 2 *Vernon*
499–652 ; 1 *P. Wms.* 118 ; 1 *Salk.* 158. " You shall not have
my daughter unless you do so and so, is to sell children and make
matches:" *Hob.* 10 ; *Fontblanque* 209–12 ; 2 *Vernon* 588 ; 1
*Mad. Ch. Pr.* 231 ; *Id.* 267 ; *Story on Con.* 595–589 ; 7 *Price*
377 ; 11 *Vesey* 530, case of St. John *v.* St. John.

It was stated that the bond was not only against the policy of the
law, but was without consideration. It does not appear from the
bond that the compromise of the charge of fornication and bastardy
was part of the consideration. In the bond the alleged considera-
tion is expressed, viz. the consent of Wyant, the father, that
Lesher may marry his daughter on condition that he treats her
well, &c. The case depends on the terms of the bond alone.

*F. Smith,* on the same side.—The only consideration expressed
in the bond is the consent of *the father.* Other consideration is
thus excluded : 3 *U. S. Digest* 17, citing 8 *B. Mon.* 596 ; 1 vol.
99, sec. 33. The bond is an entire contract, and if any part of
the consideration is illegal, it is void in toto : 5 *Barr* 452. The
bond is against public policy : 1 *Story Eq.* 259–264 ; 5 *Harrison's
Digest* 1600. The case of Hoare *v.* Hoare is the only reported
case of an agreement *before* marriage *between husband and wife,*
for a separate maintenance in the event of a future separation :
*Glancy* 423. But in the present case *the wife* is no party to the
bond. In the case of Rex *v.* Mary Mead, in 1 *Burrows* 542,
both the husband and wife entered into the article of separation :
*Reeves* 93. The case of Gawden *v.* Draper, 2 *Ventr.* 217, and
the case in 2 *Vernon* 386, were cases of agreements *after* mar-
riage. Reference was made to *Smith's Law of Contracts* 216, in
which it is stated that a deed tending to the future separation of
husband and wife, is void on grounds of public policy : 9 *B. & C.*
200 ; 17 *E. C. L.* ; although a deed providing a fund for her sup-
port on the occasion of an *immediate* separation is not so. The
instrument in the former case tends to facilitate the separation ; in
the latter, the separation being about to ensue, the effect of the
instrument is to save the wife from destitution.

The opinion of the Court was delivered by

WOODWARD, J.—Two grounds of defence were assumed on the
trial, which the Court sustained as a bar to the plaintiff's action,
and which I proceed to notice in their order. In the first place, it
was objected that the consideration mentioned in the bond was
illegal and against the policy of the law. The seals imputed a
consideration, and the compromise of a prosecution for bastardy,
as was decided in Mitchell *v.* Maurer, 9 *W. & Ser.*, was an adequate
consideration for the bond ; but it is argued that the bond must

[Wyant *v.* Lesher.]

be judged by the consideration set forth in it, and that this, being illegal, tainted whatever other consideration may be found growing out of the transaction. Without stopping to inquire how far an illegal consideration can operate to impair an entire contract where there are other good considerations to sustain it, the two considerations mentioned in this bond may be confidently pronounced legal and valid. What are they? 1st, that Mary had had a child to John Lesher, which in effect is *past cohabitation*, a consideration which has always been held sufficient to support a settlement or an agreement to pay money; and 2d, the father's agreement that John might marry Mary, which is said to be nothing because she was of age and capable of contracting marriage without her father's consent. A father's consent can never be an unimportant fact in a daughter's nuptials. Where she resides in his family, he stands in *loco parentis*, notwithstanding she has attained her majority. He has a right to advise her matrimonial choice. He is bound not only in morals, but by statute law, to support her and her children, if otherwise unprovided for; and her expectations from his estate may be materially influenced by her marriage with or without his consent. If there be nothing in the filial relation to render the paternal blessing a thing of value, these considerations show that there are possible inconveniences to the father, and advantages to the son-in-law, which, on the strictest principles of contract, are sufficient to hold him to such an obligation as the present. In what does the imagined illegality of the consideration of this bond consist? Is it immoral for a seducer to provide for the victim of his passions and the offspring of their guilt? Illegal for a suitor to propitiate parental consent to a daughter's marriage by a promise that he will live with and treat her as a kind and affectionate husband ought? It would be a disgrace to our age and generation if the law compelled an affirmative answer. But it does not. Such motives for a promise are legal and reasonable, and afford abundant ground for sustaining it; especially when, as here, though made to the father, it is intended for the benefit of the daughter and her child.

A second objection urged against the plaintiff's recovery is that the bond itself is against public policy, illegal, and void. The defendants bound themselves in the sum of $500 that John should treat Mary " as a loving and affectionate husband ought to do, and not desert her; and if the said John Lesher, after marriage, shall or will maltreat, abuse, or desert the said Mary C. Wyant, then the said obligors to pay the said Jacob E. Wyant the aforesaid sum of $500 for the use and support of the said Mary C. Wyant and her heirs." Though equity will not always lend its aid to enforce articles of separation between husband and wife, yet post-nuptial contracts between them for a separate maintenance of the wife have often been decreed; an example of which, similar

[Wyant *v.* Lesher.]

in many of its circumstances to the present case, may be seen in Seeling *v.* Crawley, 2 *Vernon* 386; and the general doctrine will be found fully discussed in Lehr *v.* Beaver, 8 *W. & Ser.* 104. Here, however, the contract was *ante-nuptial;* and although made between parties competent to contract, is supposed nevertheless to be against policy, because looking to a future separation, and tending to encourage domestic feuds and broils.

The idea is, that such a contract gives a wife an interest in disobedience, and renders her more independent by misconduct than by the most strict observance of marriage duties. Mr. Clancy, in his work on Married Women, p. 422, felicitates himself that Hoar *v.* Hoar, reported in 2 *Ridgway's Parl. Cases* 268, is the sole example of a compact before marriage of so mischievous tendency which has found its way into courts of justice.

I have examined that case attentively, and the contract (which related to personal property of the wife before marriage) was fully enforced against the husband in the House of Lords, on proof of his ill-treatment and desertion of the wife. In our own books I have found no case on the precise point; but I apprehend the principles continually recognised in marriage settlements, articles of separation, and settlements of bastardy cases, justify the contract before us.

In the two first-mentioned class of contracts, the object in view is the maintenance of the wife and her children, in the event of the husband's inability or unwillingness to provide for them; and in the case of bastardy, the support of the infant; and these are purposes sanctioned by public policy, morals, and law. I see no more tendency in such a contract as this bond, to disturb the harmony of conjugal life, than in a marriage settlement, or in articles entered into after marriage looking to a future separation. This husband stipulated simply for the performance of his duty, and a faithful discharge of that was the surest way to preserve peace in his family. Among the most imperative of the duties assumed in the marriage contract, were the support and maintenance of his wife and child, and for these it was prudent in her father to exact from him a security additional to the marriage vow. If there were failure here the bond is forfeit, and the plaintiff should have a verdict; but whether the conditions of the bond have been violated or not is a question for the jury, to whom the evidence ought to have been submitted.

The judgment is reversed and a *venire de novo* awarded.