BURNS v. STEVENS.

1. MORTGAGES—DEED AS MORTGAGE—EVIDENCE—SUFFICIENCY.
   In a suit to have defendant's interest in a deed declared to be a mortgage, and to require her to quitclaim her interest to plaintiff upon repayment to her of the money she advanced, evidence held, sufficient to establish plaintiff's case.[1]

2. CONTRACTS — COURT DOORS NOT CLOSED TO IMMORAL PEOPLE WHERE CONTRACT RIGHTS INVOLVED.
   The doors of courts are not closed to people who lead immoral lives when contracts between them untainted with illegality or fraud are involved.[2]
   SNOW and FELLOWS, JJ., dissenting.

Appeal from Oakland; Covert (Frank L.), J.    Sub-

---

[1]Mortgages, 41 C. J. § 123; [2]Contracts, 13 C. J. § 402; Equity, 21 C. J. § 173.

mitted June 17, 1926.   (Docket No. 48.)    Decided
October 22, 1926.

Bill by Edward Burns against Clara Stevens to have
an interest in a deed declared to be a mortgage.   From
a decree for plaintiff, defendant appeals.    Affirmed.

*John R. Rood,* for plaintiff.

*Edward H. Kennedy, Sr.,* for defendant.

SNOW, J. (*dissenting*).    The defendant is a divorced
woman, 42 years of age.    In the latter part of 1916,
she met the plaintiff and began keeping company with
him.    He was six years her junior, a widower, and
was a police officer in the city of Detroit.    Early in
1919 the plaintiff commenced living at the home of
defendant and remained there until May, 1922.    What
the relations of the parties were during this period
of time is in dispute between them. .  The defendant
claims they were those of husband and wife, and that
a common-law marriage existed.    This, plaintiff de-
nies, although he admits that he frequently urged her
to marry him, but that she refused.    Defendant
further claims that they pooled their joint earnings,
and that she bought the necessaries from the common
fund, and succeeded in saving a considerable sum of
money; that they bought an automobile and took a trip
in it to St. Louis, Missouri, sleeping together along the
road; that they at all times lived together as husband
and wife and occupied the same bed; that many of
their acquaintances thought they were married, and
that he introduced her as his wife.    The plaintiff
denies such were their relations, and he claims he was
simply rooming with her, although he never paid
board or room rent until shortly before he left in
1922.

In June, 1921, they contracted for the purchase of
a cottage on Ox Bow lake in Oakland County, for

$1,700. Defendant claims they had $600 of their common fund which she had saved, and that she advanced $400 additional from funds belonging to the estate of her father, making a down payment of $1,000, the balance to be paid in monthly installments. The contract ran to both jointly. This was as they both wished it, but plaintiff claims it was to be his sole property, and that her name was put in the contract for the purpose of securing her in the repayment of the $400 she had advanced from her father's estate, of which she was administratrix; that the balance of the initial payment was his. After the purchase of the cottage they frequently visited it together, spending his furloughs and days off from the department there. This continued until May, 1922, when, defendant claims, plaintiff, captivated by another woman, left her. The balance of the purchase price was paid and plaintiff demanded a deed of the property to himself. The deed, however, was drawn according to the terms of the contract to plaintiff and defendant jointly, and was secured by the defendant and put on record.

The plaintiff has paid defendant $100 of the $400 she advanced from the estate and has tendered her the balance. The bill in the instant case is filed to compel defendant to quitclaim her interest in the property to the plaintiff, and, in effect, to declare her interest in the contract to be that of a mortgagee, terminating upon payment to her of the money it is conceded she advanced when the contract was made. The trial court granted the relief prayed, from which decree defendant appeals.

The testimony of the parties is in direct conflict on most of the material matters in the case. A careful review of the record, however, leads us to conclude that for more than three years, without being married, they lived together as husband and wife in violation of law, and opposed to ordinary common de-

236—Mich.—29.

cency.   That they had an affection for each other seems apparent, as it is conceded he often asked her to marry him, and she contends they did in fact lawfully agree between themselves to be husband and wife.   The plaintiff did not pay board, but gave his earnings to her, and from them and money she earned by working they lived and succeeded in saving a considerable sum beside.   We are impressed with the truth of defendant's contention that this property was bought from this fund, and that subsequent payments, to some extent at least, came from the same source. We are also impressed that it was the original intention of both that they were to have an equal interest in it, and that it was mutually desired that the survivor should take the whole.   It is evident that plaintiff's present attitude exists because he has tired of defendant and has abandoned her.

There is little commendable that may be said of a situation of this kind, or of either of the parties.   They are *in pari delicto*.   They disregarded established rules of society, and made light of the sanctity of the marriage state.   Neither comes into court with clean hands, and equity must leave them where they voluntarily placed themselves.

The decree of the trial court should be reversed, and one should be entered dismissing plaintiff's bill of complaint.

FELLOWS, J., concurred with SNOW, J.

SHARPE, J.    I find myself unable to agree with the conclusion reached by Mr. Justice SNOW.   The bill of complaint herein was filed after the trial court had announced its decision in a suit brought by plaintiff to restrain defendant from representing herself as his wife and to obtain a judicial determination that they were not legally married.   The decree therein granting plaintiff relief as prayed for was affirmed by

this court.   *Burns* v. *Stevens, ante,* 443.   . It is plaintiff's claim in this case that the $1,000 down payment on the contract was made up of $600 of his own money and $400 borrowed from defendant; that to secure to defendant the repayment of this $400 her name was, at her request, inserted in the contract with his as a vendee.   It is her claim that the $600 was paid out of their joint savings and that it was agreed at the time the contract was entered into that they should hold the title jointly, with the right of survivorship in the one who should outlive the other.   They were both named as vendees in the contract as written. The burden is on him to establish his claim that her name was inserted therein only for the purpose of securing repayment to her of the $400.   Were this issue to be determined solely on his testimony and hers, there would be justification in denying him relief.   The vendors, Mr. and Mrs. Ries, were called as witnesses.   He testified:

"She would like to have her name on the contract, so if anything happened to Mr. Burns, see, he was an officer, if anything should happen to him, she would be secured.

"*Q.* For what, secured for what?

"*A.* For the money she put into it.

"*Q.* What money did she say she put into it?

"*A.* Just at the time she didn't say, but shortly afterwards she said $400.   *   *   *

."*Q.* Did Miss Stevens say anything to you at the time the original contract was drawn as to whether upon being paid the amount that she put up that she would make a release to Mr. Burns?

"*A.* Yes, sir.

"*Q.* What did she say?

"*A.* Said when Mr. Burns paid me up he would pay her and then she would release it."

She  testified:

"*A.* Well, she said that the reason she wanted her name on it was because she was furnishing part of

the money so as to make a larger payment and she wanted some security and she said that was the only security that Mr. Burns could give her.

"Q. Did she say anything about giving a release when she got her money?

"A. Yes.

"Q. What did she say?

"A. She said after he got us paid then he was to pay her and he was to get the deed."

It is also significant that the moneys in the bank (their joint savings, as defendant claims) were deposited by her in his name alone.

On this record, and in view of the fact that the trial court heard and saw the witnesses, I am unwilling to reverse his finding, stated as follows:

"I am convinced that the contract was given for the purpose of securing to defendant the repayment of the sum of $400 and that the idea of a joint interest in the property did not occur to her until after the estrangement between herself and plaintiff; that she secured possession of the deed and recorded it for the purpose of fortifying herself in this claim."

In my opinion the rule that if the parties to a suit are *in pari delicto* a court of equity will leave them where they have placed themselves should not be here applied. The land contract is in no way tainted with illegality. The defendant does not claim that any fraud was practiced upon her in connection with the transaction. It is doubtless unusual to secure the payment of a loan advanced as a part of the price of property purchased under a land contract by having the lender's name inserted in the contract, but it is sometimes done. *Domboorajian* v. *Domboorajian*, 235 Mich. 668. The question to be determined in this case, as it was in that, is whether the party acquired an interest in the property or a security for the money advanced. The manner in which they were then living is immaterial to the issue except in its bearing upon the weight to be given to their testimony.