Argued April 28; affirmed June 2; rehearing denied
September 14, 1943

# DANNELLS ET AL. *v.* UNITED STATES NATIONAL BANK OF PORTLAND ET AL.

(138 P. (2d) 220)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK and HAY, Associate Justices.

*Ira W. Carl,* of Portland, for appellants.

*Wilber Henderson,* of Portland (Platt, Henderson, Warner & Cram, of Portland, on the brief) for United States National Bank of Portland, respondent.

*John F. Reilly* and *Charles P. Duffy,* both of Portland (Reilly & Davidson, of Portland, on the brief) for Ruby Caldwell, respondent.

KELLY, J.   John Dannells died testate in Portland, Multnomah county, Oregon, on November 2, 1926. By his last will and testament he appointed the defendant bank as executor thereof. He bequeathed to

his wife, Laura J. Dannells, one of the plaintiffs herein, $20,000, to his son Charles R. Dannells, $100, and to plaintiff, Dorothy Dannells, wife of Charles R. Dannells, the sum of $1,000. He also bequeathed $1,000 each to Mary Neuman and Christina Skans. He devised and bequeathed the residue of his estate to defendant bank in trust, directing and authorizing said bank as such trustee to pay to plaintiff, Laura J. Dannells, the sum of $200 per month as long as she should live and such other sum as might be necessary for her comfort and maintenance; to pay to said Charles R. Dannells the sum of $100 per month until he should attain the age of fifty years, then the sum of $10,000 in cash and thereafter the sum of $300 during the balance of his life; to pay to plaintiff, Dorothy Dannells, if she be living and is still the wife of Charles R. Dannells when said Charles R. Dannells had attained the age of fifty years, or if she be the unmarried widow of said Charles R. Dannells when he would be fifty years of age if living, the sum of $5,000; and upon the death of the survivor of said Laura J. Dannells and Charles R. Dannells to deliver the residue of said estate to the Board of Trustees of the Sellwood Methodist Episcopal Church of Portland, Oregon, to establish or endow a Methodist Hospital.

On December 2, 1926, said will was admitted to probate in the Circuit Court of the State of Oregon, for the County of Multnomah, Probate Department, and the defendant, The United States National Bank, was appointed executor of the estate of said John Dannells, deceased, and said bank thereafter duly qualified as such executor.

Mr. William S. Nash, an attorney of Portland, had been Mr. John Dannells' attorney and was in possession

of his said last will and testament. After Mr. Dannells' death, Mr. Nash produced the will and the defendant bank thereupon retained Mr. Nash as its attorney in the matter of the estate and later in the matter of trusteeship of the Dannells' estate. About a month after Mr. Dannells' death, through the late Judge J. P. Kavanaugh, Mr. Nash learned that defendant, Ruby Caldwell, proposed to present a claim against the Dannells estate. This information was attended by a statement that Judge Kavanaugh had in his possession a number of letters written by the deceased to Ruby Caldwell which might be embarrassing if not offensive to the widow, son and daughter-in-law of the deceased.

Through the offices of Mrs. Neuman, who is a niece of plaintiff, Mrs. Laura J. Dannells, Mrs. Dannells was apprised of the intention of defendant Caldwell to file a claim as stated.

That information was presented to Mrs. Dannells during the year 1927. Thereupon, Mrs. Dannells offered Mr. Nash $5,000 "to keep it out of court". Mr. Nash accepted $2,500 from her. Thereafter, Mrs. Dannells, the widow of deceased, consulted Mr. Bradley Ewers, Judge Ashby Dickson, Mr. Sidney Graham, and caused the late Judge Kavanaugh to make a trip to Los Angeles to interview his client Ruby Caldwell. It is evident that the motive prompting Mrs. Dannells to enlist such an array of lawyers was to make assurance doubly sure that the public would not become aware of the relationship between Ruby Caldwell and Mrs. Dannells' late husband.

A claim in behalf of Ruby Caldwell was prepared, the same being verified on the 12th day of September, 1927, and known to this record as plaintiffs' exhibit 4.

The first two items therein are described as follows:

"Promissory note in the sum of $20,-000.00 executed by the deceased, dated November 12, 1920, due on or about January 12, 1927, with interest at the rate of 7 per cent per annum until paid. No part of the principal of said note has been paid and no part of the interest, except as hereinafter stated _____ $20,000.00

Interest _____ 9,621.10"

The remaining items are for nursing and general care, board, lodging and traveling expenses, totaling _____ 8,737.00

The total amount of the claim is _____ $38,358.10

On the 26th day of September, 1927, an agreement was made between Ruby Caldwell, and the defendant bank, as executor and trustee of the estate of John Dannells, deceased, wherein it is recited that the claim of Ruby Caldwell against said estate has been fully compromised and settled between the said Ruby Caldwell on the one part, and the said defendant bank as such executor and trustee, and all of the devisees and legatees named in the last will and testament of said deceased, on the other part; and the terms of said settlement and agreement are set forth as follows:

"The said Ruby Caldwell shall be paid the sum of Ten Thousand Five Hundred Dollars ($10,-500.00) in cash, upon the execution of this agreement, and in addition thereto, an annuity during the full term of her natural life of the sum of Fifteen Hundred ($1500.00) per year, payable in monthly installments of One Hundred Twenty-five Dollars ($125.00) per month, the first payment thereof to be made on the first day of October A. D. 1927, and a like payment on the first day of each and every

month thereafter during the natural life of said Ruby Caldwell; and

Whereas, said compromise and settlement has been approved by the Circuit Court of the State of Oregon for the County of Multnomah, Probate Department, in the Matter of the Estate of John Dannells, deceased;

Now, Therefore, the premises being as above stated, and for the purpose of carrying said compromise and settlement into effect, and in consideration of One Dollar ($1.00) and other good and valuable considerations paid and moving from each party to the other, the said The United States National Bank of Portland, as Executor and Trustee of the Estate of said John Dannells, deceased, hereby covenants and agrees to and with the said Ruby Caldwell to promptly pay to her out of the income and corpus of said estate the sum of Ten Thousand Five Hundred Dollars ($10,500.00) in cash, upon the execution of this agreement, the receipt of which is hereby acknowledged, and the further sum of Fifteen Hundred Dollars ($1,500.00) each year during the term of her natural life, in monthly installments of One Hundred Twenty-five Dollars ($125.00) each month, the first payment thereof is to be made on the first day of October, A. D. 1927, and a like payment of One Hundred and Twenty-five Dollars ($125.00) on the first day of each and every month thereafter during the full term of her natural life.

And the said Ruby Caldwell in consideration of said payments to be made in conformity with the terms of this agreement hereby accepts the same in full payment and discharge of her said claim and all other claims against the estate of said deceased.

In the event that said The United States National Bank of Portland, Executor and Trustee of the Estate of John Dannells, deceased, shall fail, neglect or refuse to pay any one or more of the monthly installments as in this agreement provided, and the

said Ruby Caldwell shall commence suit or action to collect said installment or installments, then the court having jurisdiction of said cause, shall allow said Ruby Caldwell a reasonable sum as attorney's fees in said suit or action, in addition to the costs and disbursements allowed by statute.''

To this agreement of September 26, 1927, there was appended the written consent to and approval of all and singular the terms, covenants and conditions contained in said agreement, signed by all of the devisees and legatees named in said decedent's last will and testament including plaintiffs herein and their assignor Charles R. Dannells.

On the 27th day of September, 1927, by a formal written letter, the plaintiffs herein and their assignor Charles R. Dannells and the Board of Trustees of the Sellwood Methodist Episcopal Church of Portland, Oregon, expressly authorized the trust department of defendant bank to comply with the terms of said agreement and compromise, which letter of authorization contained the following provision:

''We, the undersigned, hereby instruct and authorize you to make said payments from the income and/or corpus of the estate of John Dannells, deceased, and to make each and all of said payments a first charge against said estate prior to any payment due to either or any of us under the terms and conditions of the will of the said John Dannells, deceased.''

On the 30th day of September, 1927, based upon a petition of defendant bank stating that said agreement of compromise and settlement had been made, an order authorizing said settlement with Ruby Caldwell in accordance with said agreement, was made and entered by the Circuit Court of the State of

Oregon for Multnomah County, Probate Department, in re said estate of John Dannells, deceased.

On November 21, 1928, an order approving the final account of defendant bank as executor of the estate and last will and testament of John Dannells was made and entered by said circuit court, title omitted, as follows:

"This matter coming on to be heard at this time upon the application of The United States National Bank of Portland, Executor of the Estate of John Dannells, deceased, for an order of the above entitled Court approving the Final Account of said The United States National Bank of Portland, on file herein, and for an order authorizing the payment of the unpaid expenses of administration, the payment of the legacies provided for in the will of said deceased, and the distribution of the residue of said estate to the Trustee named in the will of said deceased, and

It appearing to the Court and the Court finds that Notice to Creditors was given by publication thereof in the *Sunday Welcome,* a newspaper of general circulation printed and published in Multnomah County, Oregon, as shown by the affidavit of publication filed herein, and that Notice of the Filing of said Final Account was given by publication thereof in the *Sunday Welcome,* a newspaper of general circulation printed and published in Multnomah County, Oregon as shown by the affidavit of publication filed herein, and that Tuesday, the 20th day of November, 1928, at the hour of 9:30 o'clock in the forenoon of said day and the Courtroom of said Court were appointed by an order of the above entitled Court made and entered as the time and place for the hearing of objections to said Final Account and the settlement thereof, and that no objections have been made or filed to the allowance and approval of said Final Account, and

It further appearing to the Court that said Executor has possession of all of the property described in its Final Account on file herein, and that all taxes levied or assessed against the property of said estate which have become due have been paid in full, and that the Inheritance Tax due to the State of Oregon from said estate and the devisees and legatees named in the will of said deceased has been paid, and that there is no Federal Estate Tax due or payable from the estate of said deceased, and that the funeral expenses of said deceased and all claims of every name and nature which have been proved and allowed against said estate have been paid in full, and that all of the expenses of administration of said estate have been paid, except the fees due to said Executor, $4,000.00 balance due to Wm. S. Nash for legal service rendered to said estate, and the cost of publishing the Notice of the Filing of said Final Account, and that the cash in possession of said Executor is insufficient to pay the balance due on the expenses of administration and all of the legacies provided for in the will of said deceased, and that Laura J. Dannells has agreed to accept $15,000.00 in cash and the obligation of The United States National Bank of Portland, Trustee under the will of John Dannells, deceased, in the sum of $5,000.00 payable out of the next installment of principal to be paid by L. H. Sammons on the contract for the purchase of the Peerless Laundry in order that the administration of said estate may be closed at this time, and

It further appearing to the Court that under and pursuant to the agreement settling the claim of Ruby Caldwell against the estate of said deceased, the net estate to be delivered to The United States National Bank of Portland, Trustee under the will of said deceased, is charged with the obligation of making payments of $125.00 per month to said Ruby Caldwell during the remainder of her natural life.

Now, Therefore, it is Ordered and Decreed that each and all of the acts and transactions of said Executor in the matter of the administration of the Estate of John Dannells, deceased, and particularly the Final Account of said Executor, be and the same is hereby confirmed and approved, and said Executor be and it is hereby authorized to pay the balance of the expenses of administration as set forth in its Final Account, and to pay the legacies provided for in the will of said deceased by making payment to Charles R. Dannells, Dorothy Dannells, Mary Neuman and Christina Skans in cash, and by paying Laura J. Dannels, $15,000.00 in cash and delivering to said Laura J. Dannells the obligation of The United States National Bank of Portland, Trustee under the will of John Dannells, deceased, in the sum of $5,000.00, payable out of the next installment of principal to be paid by L. H. Sammons on the contract for the purchase of the Peerless Laundry, and to deliver the rest, residue, and remainder of said estate over to The United States National Bank of Portland, Trustee under the will of John Dannells, deceased, charged with the obligation to pay Ruby Caldwell the sum of $125.00 per month during the remainder of her natural life according to the agreement on file herein settling the claim of said Ruby Caldwell against said estate, and that upon filing in the above entitled Court vouchers of all disbursements made by said Executor, receipts for all of the legacies above mentioned, and the receipt of The United States National Bank of Portland as Trustee under the will of said deceased for the rest, residue, and remainder of said estate, said estate be closed, and said Executor be discharged from further liability as such.

Done in open Court this 21st day of November, 1928.

George Tazwell
Judge.''

On January 21, 1933, defendant bank instituted a suit for a declaratory decree in said circuit court against plaintiffs herein, plaintiffs' assignor, Charles R. Dannells and the then trustees of said Sellwood Episcopal Church.

In its complaint, the plaintiff in said suit recites the facts of its appointment and qualification as trustee of the estate of John Dannels, deceased, under and by virtue of the terms of his last will and testament. It also states the relationship to said deceased of plaintiffs herein and their assignor, and that each of them is a legatee named in said decedent's will. It also states that the other defendants in said suit are the trustees of the Sellwood Methodist Episcopal Church of Portland, Oregon.

The terms and conditions of the last will and testament of John Dannells, deceased, are also alleged in substance as hereinbefore stated.

That said John Dannells died on the 22nd day of November, 1926, in Portland, Multnomah county, Oregon, is also alleged, and the fact of the probate and final settlement of his estate is stated.

The settlement and compromise of the claim of Ruby Caldwell is averred and the terms and conditions of said settlement are alleged.

It is further alleged that said plaintiff therein [defendant herein] had made monthly payments pursuant to said agreement amounting to $6,750, and had also paid her $10,500 as the initial payment authorized in said agreement, the total of said payments being $17,250. The payment in full is alleged of all the legacies mentioned in said decedent's will except those bequeathed to plaintiffs herein and their assignor and to the Sellwood Methodist Episcopal Church of Portland, Oregon.

It is further alleged that on March 23, 1932, the plaintiffs herein and their assignor instructed and requested the plaintiff therein to make no further payments to Ruby Caldwell out of said trust estate, for the reason that said plaintiffs herein and their assignor were advised that in the opinion of their counsel said agreement was and is void.

It is also alleged that the defendant, Ruby Caldwell, has threatened to commence a suit or action against the plaintiff therein, [defendant bank herein] to compel it to pay the monthly installments which have become payable under said contract since March 1, 1932, and to require plaintiff therein [defendant herein] to keep and fully perform the terms and conditions of said contract.

Paragraphs VIII and IX of said complaint are as follows:

"VIII

That the Estate of said John Dannells, Deceased, now in the possession of the plaintiff as such Trustee consists of the sum of $1,430.78 in cash, bonds of the market value of $24,566.33 as of January 6, 1933, mortgages on real property situated in the County of Multnomah, State of Oregon, of the face value of $32,794.52, and real property situated in Multnomah County, Oregon, of the appraised value of $11,350.00; that defendant Laura J. Dannells is of the age of about 74 years and her expectancy is the term of 6.425 years; that the defendant Charles R. Dannells is of the age of about 47 years and his expectancy is the term of 19.896 years; that defendant Ruby Caldwell is of the age of about 42 years and her expectancy is the term of 22.915 years; that the monthly payments required to be made to defendants Laura J. Dannells, Charles R. Dannells and Ruby Caldwell under said will and pursuant to said contract

greatly exceed the income from the trust estate now in the possession of the plaintiff; that said trust estate is wholly inadequate to make the payments which shall hereafter become due to defendants Laura J. Dannells, Charles R. Dannells and Dorothy Dannells under and pursuant to the terms of said will and to make the payments to defendant Ruby Caldwell which are now payable and which shall hereafter become due under the terms of said contract with her; that if defendants Laura J. Dannells, Charles R. Dannells and Ruby Caldwell shall continue to live and the plaintiff is required to make the payments provided for in said will and said contract, the trust estate now in the possession of the plaintiff will be entirely exhausted in approximately twelve years.

## IX.

That defendants Laura J. Dannells and Charles R. Dannells and Dorothy Dannells claim and assert that no further payments should be made to defendant Ruby Caldwell under said contract and defendant Ruby Caldwell claims and asserts that no further payments should be made to said defendants Laura J. Dannells and Charles R. Dannells under said will; that the claims and demands of said defendants Laura J. Dannells, Charles R. Dannells, Dorothy Dannells and Ruby Caldwell require a construction or determination of the validity of said contract with Ruby Caldwell; and that the rights, status and legal relations of the defendants Laura J. Dannells; Charles R. Dannells; Dorothy Dannells; and Harry M. Huff, F. C. Hendrick, W. D. Hoskins, I. B. Shutts, William Crosier, B. W. Cooley and L. V. King as Trustees of the Sellwood Methodist Episcopal Church of Portland, Oregon, are effected by said contract with Ruby Caldwell, and that said trust estate now in the possession of the plaintiff is not sufficient to pay the claims and demands of all of said defendants in full.''

To this complaint, defendant Ruby Caldwell filed an answer, wherein she alleged the presentation of her claim as above stated, the execution of the agreement of compromise and settlement and the order of court based thereupon.

On the 15th day of May, 1933, Mr. Howard P. Arnest was retained as attorney for plaintiffs herein and their assignor Charles R. Dannells.

On March 20, 1934, plaintiffs herein and Charles R. Dannells, being represented by Mr. Arnest, filed a reply to the answer of defendant Ruby Caldwell in said declaratory judgment proceeding, containing, *inter alia,* the following affirmative allegations:

"That on December 2, 1926, the last will of John Dannells, dated May 27, 1924, mentioned in the complaint as Exhibit B, was admitted to probate in estate proceedings No. 27308 in Multnomah County, Oregon; that plaintiff in this suit was appointed executor thereof, qualified and acted as such until November 30, 1928, when the estate was closed; that on August 31, 1927, the defendant, Ruby Caldwell, presented to said Executor a claim against the estate for sums totaling $38,358.10 and thereafter on September 12, 1926, presented a restatement of said claim for said amount,—substantial copies of said claims as presented to the Executor, marked Exhibits Y and Z, being annexed to the original answer of these defendants to the complaint herein and by this reference made a part of this amended answer to the same extent as though set forth at length herein; that the plaintiff, the Executor of said will, rejected said claims and refused to pay the same; that after such rejection, neither of said claims was presented to the court having jurisdiction of said estate for allowance, nor was either of said claims referred to any court, referee or jury for allowance, nor was any suit or action commenced thereon, but on the con-

trary; the plaintiff, then being Executor and Trustee under said will, and said Ruby Caldwell, on September 26, 1927, entered into the agreement mentioned as Exhibit B in the complaint, in purported settlement of said claims; that the consideration of said agreement was and is illegal in this: that on or about November 12, 1920, said John Dannells and said Ruby Caldwell agreed to resume illicit cohabitation theretofore indulged in between them and to thereafter, in the future, from time to time illicitly live and cohabit together, and from that date at various times and on many occasions until on or about November 22, 1925, pursuant thereto, did illicitly live and cohabit together; that the note mentioned in said claims was given by said John Dannells to said Ruby Caldwell in consideration for her agreement to thereafter illicitly live and cohabit with him, and the services, mentioned in said claims as nursing and general care, alleged to have been rendered and performed by said Ruby Caldwell for said John Dannells were her association with him and a part of their illicit life and cohabitation together pursuant to said agreement.''

Similar affirmative allegations were set forth in the third amended answer of plaintiffs herein and their assignor to the complaint of plaintiff in said declaratory judgment proceeding.

These affirmative allegations were put in issue by appropriate denials on the part of defendant Caldwell and defendant bank [plaintiff therein].

On June 13, 1934, two stipulations were filed in said circuit court in said declaratory judgment proceeding. One of these stipulations is to the effect that upon the entry of the decree therein the plaintiff [defendant bank herein] shall from the residue of the trust assets remaining after the segregation of

the items as provided by stipulation pay the following sums:

"(a) To the defendant, Laura J. Dannells, the sum of Three Thousand Dollars ($3,000.00) covering accrued payments due and payable to her under and by virtue of the Last Will and Testament of John Dannells, Deceased.

(b) To the defendants, Charles R. Dannells, or Dorothy Dannells, his assignee, the sum of Fifteen Hundred Dollars ($1500.00) covering accrued payments due and payable to him, or to her as his assignee under and by virtue of the Last Will and Testament of John Dannells, Deceased.

(c) To Wm. S. Nash, attorney for the plaintiff, the sum of Two Thousand Dollars ($2,000.00) in full for services rendered to the plaintiff. and the trust estate in this particular suit and in settlement of the controversy herein involved; and

(d) Howard P. Arnest, attorney for defendants Laura J. Dannells, Charles R. Dannells and Dorothy Dannells, the sum of Fifteen Hundred Dollars ($1500.00) in full for services rendered to the trust estate in this particular suit and in settlement of the controversy herein.

2. That on July 1, 1934, and thereafter so long as and when assets of the trust estate of John Dannells, deceased, are available therefor and until the same are exhausted, subject always to the prior claim of Ruby Caldwell on sequestered assets, the plaintiff shall pay to the defendants, Laura J. Dannells, Charles R. Dannells and Dorothy Dannells, and each of them, the payments as they accrue under and by virtue of the last will and testament of John Dannells, deceased, Exhibit A mentioned in and attached to the complaint herein.

3. That in consideration of the premises, the defendants, Laura J. Dannells, Charles R. Dannells and Dorothy Dannells, and each of them, shall and does hereby release the plaintiff of all claims of

every kind and nature that either of them may have for or on account of any acts on its part in connection with the claims of defendant, Ruby Caldwell, including the settlement of such claims by contract dated September 28, 1927, marked Exhibit B and attached to the complaint herein and/or for or on account of payments made thereunder by the plaintiff to the said Ruby Caldwell and/or for or on account of the withholding from them of payments as they have heretofore accrued under the last will and testament of John Dannells, deceased.''

The other stipulation so filed on June 13, 1934, recites that whereas charges and countercharges have been made by appearing defendants and that to carry the litigation to an end by trial and the resulting appeals to follow would further complicate the controversy and entail great expense and loss to the trust estate; and that the parties in controversy have mutually agreed to compromise and settle their disputes and immediately terminate the litigation in which they are involved and adjust and forever settle their respective claims the one against the other and also their respective and alleged claims against the plaintiff as trustee, therefore that a decree should be entered therein forthwith to provide as follows:

"(a) That the contract dated September 26, 1927, mentioned and referred to in the complaint and thereto attached as Exhibit B, is in all respects legal, valid and binding and shall be performed by plaintiff as hereinafter provided.

(b) That forthwith upon entry of decree, the plaintiff shall pay to the defendant, Ruby Caldwell, from the trust assets the sum of Three Thousand Three Hundred Seventy-five Dollars ($3,375.00) in full satisfaction of her accrued installments under said contract.

(c) That forthwith upon entry of decree, plaintiff shall pay to defendant, Ruby Caldwell, and J. P. Kavanaugh and Estes Snedecor, her attorneys, the sum of Three Thousand Dollars ($3,000.00) in full payment, satisfaction and discharge of their claims for attorneys' fees under said contract and in this suit.

(d) That plaintiff shall forthwith upon entry of decree, segregate and set aside the following assets of the trust estate of John Dannells, deceased, to-wit:''

[Here follows a list of bonds of the aggregate face value of $20,000.00 and reference to a contract upon which there is a balance of over $3400; and the following statement:

''Cash, Sufficient with face of above items to make a total of $23,500.00.'']

''Total face value $23,500.00 each of said items with the interest thereon from the date hereof; and the plaintiff on July 1, 1934, and on the 1st day of each month thereafter, shall, out of the income and corpus of said segregated trust assets, pay the sum of One Hundred Twenty-five Dollars ($125.00) to defendant, Ruby Caldwell, so long as she live, or until said segregated trust funds are exhausted.

(e) The ordinary and incidental expense necessary to the administration and protection of said segregated trust funds shall be paid therefrom.

(f) That payment of the sums and segregation of the trust assets and payment of monthly installments therefrom as above provided shall be in full performance of said contract and satisfaction and discharge of all the claims of defendant, Ruby Caldwell, thereunder forever.

(g) That in consideration of the premises, said Ruby Caldwell shall and does hereby release all claims of every kind and nature that she may have

against the residue of said trust estate, the plaintiff, and all the other defendants herein, and each of them, by reason of said contract dated September 27, 1927, and attached to the complaint herein as Exhibit B, in connection therewith, or otherwise, forever.

(h) That neither party to this suit shall have or recover costs or disbursements herein.

That said decree shall also provide and direct for payment from the residue of the trust assets of the trust estate of John Dannells, deceased, by the plaintiff to the defendants, Laura J. Dannells, Charles R. Dannells and Dorothy Dannells, the installments now accrued or hereafter to accrue under the will of John Dannells, deceased; and also for payment by the plaintiff from said trust assets of the fees to its counsel and to the attorneys representing the defendants, Dannells, herein as they and the attorneys of record herein may stipulate.

That inasmuch as this stipulation is made and entered into by way of compromise and settlement of the disputes and controversies herein mentioned, a final decree may be taken in this cause, ratifying, approving and confirming the same without any other or further notice to the parties, or any of them."

On said June 13, 1934, a final decree was entered in said declaratory judgment proceeding, wherein it is stated that the plaintiff therein appeared by Wm. S. Nash, its attorney, the defendants Laura J. Dannells, Charles R. Dannells and Dorothy Dannells appeared by Howard P. Arnest their attorney, the defendant Ruby Caldwell appeared by J. P. Kavanaugh and Estes Snedecor, her attorneys, and that the remaining defendants were in default and that their default had been entered. Said final decree of June 13, 1934, fol-

lows and conforms to the provisions, stipulations and terms of said two stipulations last above mentioned.

Four grounds are assigned as the basis for the relief sought by plaintiffs herein.

1. It is contended that the consideration for the claim of Ruby Caldwell [Plaintiff's Exhibit 4] was the immorality of said Ruby Caldwell and decedent and hence said claim was and is invalid.

2. It is charged that plaintiffs and their assignor Charles R. Dannells were fraudulently induced and coerced into executing the agreements of compromise.

3. It is urged that the probate department of the circuit court was deceived by defendant bank in that notice or knowledge of the immoral consideration for said claim was withheld from said court.

4. It is argued that the decree of the court in the declaratory judgment proceeding was and is void for the reason that the jurisdiction of the court in such a proceeding depends upon the existence of a justiciable controversy and hence a decree or judgment by consent cannot be rendered in such a proceeding.

The trial court refused to receive in evidence an agreement between decedent and Ruby Caldwell executed on the 14th day of April, 1919. This agreement was marked for identification and made a part of the record under the following provision of Section 9-202, Vol. 2, O. C. L. A. p. 40:

> * * * "Where evidence is offered by any of the parties, and excluded by the ruling of the court, the party so offering the testimony shall be entitled to have the same taken down in like manner as the testimony admitted, but the same shall be marked and designated as evidence offered, excluded and excepted to."

This provision of the statute is known to the legal profession as "the rule". "Under the rule", the agreement of April 14, 1919, just mentioned, was designated as Plaintiffs Exhibit 27.

This exhibit 27 is attested by a subscribing witness. No showing was made to the effect that the subscribing witness was either dead, out of the state or incapable of testifying as required by Section 2-812, Vol. 1, O. C. L. A., p. 321. We note, however, that the instrument in question bears a certificate of acknowledgment by the attesting witness in his capacity as notary public, attended by the impression of his notarial seal. Among the facts judicially noticed and thus assumed to be known is the identity of the seals of notaries public. Section 2-502, subdiv. 7, Vol. 1, O. C. L. A. p. 287. Moreover, the attesting witness was an attorney of this court with whose signature we are personally familiar and we have personal knowledge of the lamentable fact that he passed away on the 26th of September, 1941. The exhibit, under discussion, was finally offered in evidence on March 3, 1942. Two things thus appear: First, that the attesting witness was dead at that time; and second, the agreement was more than twenty years old.

"When a writing is more than twenty years old, the comparison may be made with writing purporting to be genuine, and generally respected and acted upon as such by persons having an interest in knowing the fact." Section 2-817, Vol. 1, O. C. L. A. p. 323.

As to the signature of Ruby Caldwell, a witness, skilled in such matters, compared the writing on said exhibit 27, purporting to be her signature with her written signature upon exhibit 18, which was treated as genuine by the defendants herein, and that witness tes-

tified that in his opinion both signatures were written by the same person.

Among the presumptions deemed by the statute to be satisfactory, unless overcome, is the presumption that a document or writing more than twenty years old is genuine, when the same has been generally acted upon as genuine by persons having an interest in the question and its custody has been satisfactorily explained. Subdivision 35, section 2-407, Vol. 1, O. C. L. A. pp. 267 and 269.

A copy of the complaint, motion and cover in case No. G-9668 instituted on November 5, 1919, in the Circuit Court of the State of Oregon for Multnomah County, wherein Ruby Caldwell is plaintiff and John Dannells was defendant was also received "under the rule", and marked Plaintiff's Exhibit 35. By the terms of this last mentioned complaint, it is shown that the same is based upon the alleged breach of the contract known to this record as Plaintiff's Exhibit 27. The signature, Ruby Caldwell, to the verification of said complaint was compared by an expert on handwriting with an admittedly genuine signature of said Ruby Caldwell and in the opinion of said expert both signatures were written by the same person. We think that Plaintiff's Exhibit 35 discloses that Plaintiff's Exhibit 27 had been acted upon as genuine. It is to be noted that Mr. John W. Kaste was the notary public before whom Ruby Caldwell subscribed and made oath to said verification. Mr. Kaste was also one of the attorneys for said Ruby Caldwell in said case No. G-9668.

We think that Plaintiff's Exhibit 27 was admissible in evidence. *Woods v. Montevallo Coal and Transp. Co.,* 84 Ala. 560, 3 So. 475, 5 Am. St. Rep. 393.

·· Omitting the notarial certificate of acknowledgment, said exhibit 27 is as follows:

"This· Agreement Made and entered into this 14th day· of April, 1919,· by and between John· Dannells, the party of the first part, and Ruby Caldwell, party of the second part, both of the City of Portland,

Witnesseth: That *whereas,* the said second party has a claim and a cause or causes of action against said first party for breach of contract, and for damages, wrongs and injuries suffered by said second party through the fault and acts of said first party, and for said wrongs, injuries and damages, said second party is about to institute and prosecute a cause or causes of action against said first party to recover thereon; and *whereas,* it is the desire of both parties hereto to compromise and settle said claims and to fully and finally adjust and liquidate all damages and all causes of action arising out of said breach of contract and said wrongs and injuries; *now therefore,* in consideration of the premises and in consideration of this compromise settlement and in consideration of the full and complete release, discharge and satisfaction of said claims and causes of action by and on the part of said second party, and in consideration of the prompt and faithful performance of the covenants hereinafter made and undertaken by the said parties hereto, the said parties and each of them, for themselves, their heirs, executors, administrators and assigns agree and bind themselves as follows, to-wit:

*First Clause:* The said first party agrees to forthwith purchase and to convey or cause to be conveyed to said second party a home, generally known and described as a bungalow, together with the lot or parcel of ground containing same; and at his own expense to furnish said bungalow complete as home for said second party, the size and location of said property, its purchase price, as well as the

kind, quality and cost of the furnishings thereof, to be mutually determined and agreed upon by the parties hereto. Said property, both real and personal to be the property of said second party, limited only as hereinafter provided.

*Second Clause:* Said first party agrees to forthwith purchase and deliver, at his own cost and expense, to said second party a new Chevrolet Automobile, to be selected by said second party, said automobile to be the sole property of said second party.

*Third Clause:* Said first party further agrees to deposit for and to the credit of said second party in a bank to be designated by said second party, the sum of $1500.00. Said deposit to be made as follows, to-wit: $500.00 cash upon the execution of this agreement, and the remaining sum of $1,000.00 to be deposited in four equal payments of $250.00 each on the first day of July, and October, 1919, and January 1st and April 1st, 1920.

*Fourth Clause:* Said party also agrees to defray and to pay any and all expenses for medical and hospital care or attention, and any and all expenses for nurses that said second party may incur for the benefit or care of said second party during the year 1919. Such expenses to be promptly paid by said first party upon demand, as the same may be incurred.

*Fifth Clause:* Said first party further agrees to pay to said second party for her use and benefit, and for her support, the cash sum of $150.00 per month for a period of thirty (30) months from this date, to be paid each and every month on the first day thereof during said period; the first payment thereof to be made upon the execution of this instrument, and the last payment thereof to be made upon the first day of October, 1921 and thereafter, and continuing during the lifetime of said second party, said first party agrees to pay to said second party

for her use and benefit, and for her support, the monthly cash sum of $100.00 to be paid on the first day of each and every month during the lifetime of said second party, save and except, and it is understood and agreed, that upon the marriage of said second party, all payments to be made under this clause No. Fifth of this contract, by the first party to said second party, shall cease and the obligations imposed upon said first party by said clause shall be deemed fully satisfied and of no further force or effect.

*Sixth Clause:* Said first party further agrees to pay to said second party, or to her heir or heirs, the cash sum of Ten Thousand Dollars ($10,000) for the support of herself or child or children, the issue of the parties hereto; said payment to be made as follows, to-wit: said first party agrees to execute contemporaneously with the execution hereof and as part of this agreement, an instrument in due form of law, and to publish and to declare said instrument to be his last will and testament or a codicil thereto, wherein and whereby said first party shall bequeath to said second party, and to her heir or heirs, the issue of the parties hereto, the said cash sum of $10,000.00, to be paid to said second party, or to her heir or heirs, the issue of the parties hereto, by the heirs, administrators or executors of said first party within a reasonable time after the death of said first party. The intent and purpose of this covenant being to make suitable provision after the death of said first party for the use and benefit of said second party, or her child or children, the issue of the parties hereto.

*Seventh Clause:* It is further understood and agreed by and between the parties hereto and said second party hereby agrees that if she shall depart this life without leaving a surviving child or children, the issue of the parties hereto, then and in that event, the said real property conveyed or caused to be conveyed by said first party to said second

party, as set forth in Clause One hereof, shall thereupon become and be the property of said first party; and to effectuate this covenant and agreement on her part the said second party, contemporaneously upon becoming vested with the title thereto shall execute an instrument in due form of law, and shall publish and declare said instrument to be her last will and testament, wherein and whereby said second party shall devise to said first party, his heirs or assigns, all of said real property.

*Eighth Clause:* In consideration of the agreements, covenants and payments imposed upon and agreed to by said first party hereunder, the said second party hereby forever releases and relinquishes all rights or claims or demands of whatsoever kind or nature had or claimed by said second party against said first party and these presents are and constitute a full release and satisfaction of the same.

*Ninth Clause:* It is further understood and agreed by both parties hereto that the covenants imposed upon and assumed by the parties hereto respectively under and by virtue of the provisions contained in clauses six and seven, hereof are mutual covenants and shall be obligatory and binding upon said parties and each of them, their heirs, executors, administrators or assigns from and after the execution of these presents.

In Witness Whereof the said parties have hereunto set their hands and seals, in duplicate, this 14th day of April, A. D. 1919.

Witnesses:              John Dannells (Seal)
J. W. Kaste          Ruby Caldwell (Seal)''

As to exhibit 27, it could plausibly be said to disclose that the commitments therein were the consideration for the note mentioned in the Caldwell claim. [Plaintiffs' Exhibits 1, 2, and 4.] The underlying basis of plaintiff's argument to the effect that the Caldwell

claim is invalid and that all subsequent proceedings in its support are likewise invalid, is that the consideration for such claim is illicit cohabitation.

■ Upon a question whether such a consideration is valid or invalid, the general rule supported by the weight of authority is stated by Williston thus:

"The fact that past cohabitation is the motive for a promise will not invalidate it though such cohabitation is not in itself sufficient consideration." Section 1745, Vol. 6, Williston on Contract, p. 4940.

To the point that such consideration will not invalidate a promise, Williston cites: *Gay v. Parpart,* 106 U. S. 679, 1 S. Ct. 456, 27 L. Ed. 256; *In re Greene,* 45 F. (2d) 428; *Bowling v. Bowling's Admr.,* 222 Ky. 396, 300 S. W. 876; *Brown v. Kinsey,* 81 N. C. 245; *Burton v. Belvin,* 142 N. C. 151, 55 S. E. 71; *Thayer v. Thayer,* 189 N. C. 502, 127 S. E. 553, 39 A. L. R. 428; *Panther v. McKnight,* 125 Okl. 134, 256 P. 916; *Wyant v. Lesher,* 23 Pa. 338; *Whaley v. Norton,* 1 Vern. 483; *Gray v. Mathais,* 5 Ves. 286; *Nye v. Moseley,* 6 B. & C. 133; *Friend v. Harrison,* 2 C. & P. 584; *Ex parte Naden,* L. R. 9 Ch. 670; *Burns v. Stevens,* 236 Mich. 447, 210 N. W. 483.

To the point that such cohabitation is not in itself sufficient consideration, Williston cites: *Swartz v. Bachman,* 267 Pa. 185, 110 A. 260; *Clark's Admr. v. Callahan,* 216 Ky. 674, 288 S. W. 301.

The general rule is also supported by the following authorities: *Prince v. Matthews, et al.,* 159 S. C. 526, 157 S. E. 836; *Cusack v. White,* 2 Mill. (S. C.) 279, 12 Am. Dec. 669; *Singleton v. Bremar,* 1 Harp (S. C.) 213; *Smith v. DuBose,* 78 Ga. 413, 3 S. E. 309, 6 Am. St. Rep. 260, *Harlow v. Laclair,* 82 N. H. 506, 136 A. 128,

50 A. L. R. 973; *Hall v. Latimer & Son,* 81 S. C. 90, 61 S. E. 1057; *Denton v. English,* 2 Nott & McCord, (S. C.) 581, 10 Am. Dec. 638.

██ Under the common law, a promise made in consideration of past illicit cohabitation was valid if made under seal, but otherwise unenforceable because lacking in a real consideration. In Oregon, an agreement in writing, without a seal, for the compromise or settlement of a debt or controversy is as obligatory as if a seal were affixed. Section 2-806, Vol. 1, O. C. L. A. p. 318.

It is true that there is authority contrary to the general rule above stated as shown by the following statement by Williston:

"* * * it has been held that a promise to pay a woman on account of cohabitation which has ceased * * * is invalid." 1 Williston on Contracts, Rev. Ed. Section 148, p. 523.

In fact in 1879, this court held that where the putative father of a bastard child agrees with the mother that he will pay her for boarding and clothing such child, such contract is without consideration and cannot be legally enforced. *Nine v. Starr,* 8 Or. 49.

██ Since *Nine v. Starr,* supra, was decided, the policy of this state in that regard was changed by legislation enacted in 1917. Since then it has been and is the policy of this state not only to permit but to require any man who is responsible for any unmarried female becoming pregnant with a child, which, if born alive, may be an illegitimate child or child born out of wedlock, to pay or secure to be paid to her such sum of money or other property as she may agree to receive in full satisfaction and shall be approved by the judge of the ju-

venile court of the county where such action is pending. Sections 28-901 and 28-903, Vol. 3, O. C. L. A., pp. 595, 596 and 597.

"Contracts wherein the putative father agrees to contribute to his illegitimate child's support in lieu of the statutory remedy are valid." 7 C. J., subject, Bastards, section 36, p. 956; 10 C. J. S., same subject, p. 88, section 19 and authorities there cited.

"The obligation imposed on the father by the statute to support his bastard child is a sufficient basis for the consideration for his promise so to do; and the right of the mother to compel the father to support the child under such a statute may furnish the basis for the consideration for his promise to her to pay or provide for the support of the child." 10 C. J. S. subdiv. b, section 19, pp. 89, 90.

Aside from the import of said exhibit 27, there is no direct testimony of immoral relationship between the decedent and Ruby Caldwell. There is no agreement that the parties thereto will illicitly cohabit in the future. There is no proof that they did so.

As stated, five lawyers were consulted by Mrs. Laura J. Dannells and one of them, Mr. Arnest, placed in issue in the pleadings in the declaratory judgment in suit all the contentions here urged, except as to the alleged fraudulent course inducing and coercing plaintiffs to compromise and settle the Caldwell claim and as to the authority of the court in such suit to enter a consent decree or judgment. In that suit, as in the probate court, an agreement of compromise was made.

To the writer, it is obvious that none of the several attorneys consulted by plaintiff could find sufficient evidence of continuing illicit cohabitation to justify a trial where proof of such relationship would be essential to their client's cause.

There is no testimony upon which a court could find that any attorney fraudulently induced or coerced plaintiffs to settle or compromise their differences with Ruby Caldwell.

It is obvious that plaintiffs changed their attitude toward the Caldwell claim after urging Mr. Nash to "keep it out of court" and after executing the agreement of settlement and compromise of September 26, 1927. [Exhibits 3 and 18.] When Mr. Arnest was retained and the declaratory judgment proceeding instituted, plaintiffs authorized Mr. Arnest to tender the issues upon which to contest said claim notwithstanding that such issues involved the charge of illicit relationship between decedent and Ruby Caldwell.

Holding as we do, that the record does not support the charge that the consideration for the claim of defendant Ruby Caldwell was invalid, and that there is no evidence upon which it could be said that plaintiffs herein were fraudulently induced or coerced into making the compromise settlements aforesaid, there remains but one further contention emanating from plaintiffs and that is whether a consent decree may be entered in a declaratory judgment proceeding.

Section 1 of the uniform declaratory judgment act is as follows:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative

·in form and effect, and such declarations shall have the force and effect of a final judgment or decree.'' General Laws of· Oregon, 1927, Section 1, p. 378, ·Chapter 300; Section 6-601, Vol. 1, O. C. L. A. p. 531.

■ This provision. of the statute. enlarges but does not diminish the power and authority of the courts of record.

■ The statute in effect prior to the enactment of the uniform .declaratory judgment act authorized the rendition of judgment on defendant's confession with plaintiff's assent. Section 6-401, Vol. 1, O. C. L. A. p. 526.

Our attention has been called to no case passing directly upon the question whether in a declaratory judgment proceeding a judgment or decree may be entered upon the consent of defendants, but the Supreme Court of California has held that the default of a defendant, who, being duly served, did not appear and answer a complaint seeking a declaratory judgment, constitutes an admission of every material fact essential to such judgment, and also that such judgment constitutes *res adjudicata* as to the defaulting defendant. *Strong v. Shatto,* 201 Cal. 555, 258 P. 71.

Under the authority of that California case, it could not be argued that by appearing and expressly admitting every material fact and also expressly consenting to the rendition of a judgment thereon, defendant could deprive the court of jurisdiction to enter a judgment upon the merits in accordance with such admission and consent.

■ The defendant bank has made payments as stated in reliance upon the agreements executed by plaintiffs and the other interested parties and upon the

formal orders of the court and we are constrained to hold that plaintiff ought not to be allowed at this time to allege or attempt to prove the alleged invalidity of the Caldwell claim. It is a case where the principle of estoppel must be applied.

In fairness to defendant bank, it must be said that the record discloses no ground upon which the charge of fraudulent inducement, persuasion or coercion can be upheld.

The decree of dismissal entered by the circuit court is affirmed.